## JANE GREENWOOD[1] *vs.* TOWN OF EASTON.

Bristol. April 5, 2005. - June 10, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Governmental Immunity. Massachusetts Tort Claims Act. Negligence,*
Municipality. *Municipal Corporations,* Liability for tort, Governmental
immunity.

In a civil action against a town for personal injuries sustained on town property
due to the town's allegedly negligent installation of certain structures
there, a Superior Court judge properly denied the town's motion for sum-
mary judgment on the ground of immunity from liability under the
discretionary function exemption of the Massachusetts Tort Claims Act
(the Act) as provided in G. L. c. 258, § 10 (*b*), where the town failed to
satisfy its burden of showing that the actual manner in which it installed
the relevant structures on its property was the product of policy making or
planning considerations [469-473]; likewise, the town was not exempt
from liability based on either § 10 (*j*) (3) of the Act, which squarely states
that harm resulting from negligently maintained public property is not
subject to a general liability exclusion [473-475], or § 10 (*a*) of the Act,
where the town was not acting in compliance with any zoning bylaw,
regulation, or municipal order adopted by the town when it installed the
structures [475].

CIVIL ACTION commenced in the Superior Court Department on
May 9, 2000.

The case was heard by *Richard T. Moses,* J., on a motion for
summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Charles M. Hughes* for the plaintiff.

*Stephen M.A. Woodworth* for the defendant.

SPINA, J. On the afternoon of May 7, 1999, Denise Greenwood
(Greenwood) was standing in a grassy area that was adjacent to
the parking lot of Oliver Ames High School (high school) and
owned by the town of Easton (town). She was seriously injured

---

[1]As mother and next friend of Denise Greenwood.

when a vehicle leaving the parking lot struck a horizontal telephone pole that was being used as a parking barrier, and the force of the collision caused the pole to move forward several feet, knocking Greenwood to the ground and rolling over her leg and upper body. Telephone poles had been placed on, but not secured into, the ground to separate the parking lot from the surrounding high school property.

The plaintiff, Jane Greenwood, brought a negligence action against the town and Gregory Woodward, the driver of the vehicle, for the personal injuries sustained by her daughter.[2] In her complaint, the plaintiff alleged that the town had acted negligently by placing barriers on the ground and failing to secure them to prevent them from moving; by failing to maintain the parking area and the property around the high school in a safe manner; and by failing to warn of a defect on the property. The town filed a motion for summary judgment, pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), asserting that it was immune from liability pursuant to various provisions of the Massachusetts Tort Claims Act (Act), G. L. c. 258, § 10. A judge in the Superior Court denied the town's motion, concluding that the town was not entitled to immunity under the Act, and that a jury could find that the use of unsecured telephone poles as barriers in the parking lot created an unreasonable and foreseeable risk of injury to persons in Greenwood's position. The Appeals Court reversed in an unpublished memorandum and order issued pursuant to its rule 1:28. See *Greenwood* v. *Easton*, 62 Mass. App. Ct. 1101 (2004). We granted the plaintiff's application for further appellate review to decide whether the town was entitled to immunity from liability under G. L. c. 258, § 10 (*a*), (*b*), and (*j*).[3] For the reasons that follow,

---

[2] Although Woodward was named as a codefendant in the plaintiff's complaint, he is not involved in the present appeal.

[3] Pursuant to *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999), an order denying a municipality's dispositive motion filed under G. L. c. 258, § 10, is regarded as a final order subject to an immediate appeal. See *Kent* v. *Commonwealth*, 437 Mass. 312, 315-316 (2002). It is important to determine immunity issues early to protect public officials and government agencies from unwarranted disruption and harassing litigation. See *Brum* v. *Dartmouth*, *supra.* The right to immunity from suit is effectively "lost as litigation proceeds past motion practice." *Id.,* quoting *Puerto Rico Aqueduct & Sewer Auth.* v. *Metcalf & Eddy, Inc.,* 506 U.S. 139, 145 (1993).

we affirm the order of the Superior Court judge denying the town's motion for summary judgment.

1. *G. L. c. 258, § 10 (b).* General Laws c. 258, § 2, provides: "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable . . . for any amount in excess of one hundred thousand dollars." The Act exempts from liability "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10 (*b*).[4] Here, the town contends that it is immune from the plaintiff's negligence claim under this discretionary function exception to governmental tort liability because its decision to use telephone poles as parking barriers involved policy making and planning, discretionary actions plainly within the purview of § 10 (*b*). Accordingly, the town argues that it was entitled to summary judgment. We disagree.

The first step in deciding whether the discretionary function exception forecloses a plaintiff's claim "is to determine whether the governmental actor had any discretion . . . to do or not to do what the plaintiff claims caused [the] harm." *Harry Stoller & Co.* v. *Lowell,* 412 Mass. 139, 141 (1992). "[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, [the] discretionary function exception to governmental liability has no role to play in deciding the case." *Id.* Here, the plaintiff essentially has not challenged the town's assertion that its use of telephone poles as parking barriers was not prescribed by a statute, regulation, or established agency practice.

---

[4]There is no dispute between the parties that the town is a "[p]ublic employer" as that term is defined in G. L. c. 258, § 1, and has the benefit of the protection from liability provided by the discretionary function exception of G. L. c. 258, § 10 (*b*), *if* the town's conduct qualifies as a discretionary function.

The second, and typically more difficult, step in deciding whether the discretionary function exception forecloses a plaintiff's claim "is to determine whether the discretion that the actor had is that kind of discretion for which § 10 (*b*) provides immunity from liability. Almost all conduct involves some discretion, if only concerning minor details. If allegedly tortious conduct were to be immunized from causing liability simply because there was some element of discretion in that conduct, the discretionary function exception would go a long way toward restoring the governmental immunity that G. L. c. 258 was designed to eliminate." *Id.* The discretionary function exception is narrow, "providing immunity only for discretionary conduct that involves policy making or planning." *Id.* Deciding whether particular discretionary acts involve policy making or planning depends on the specific facts of each case. See *Horta* v. *Sullivan*, 418 Mass. 615, 620 (1994). "The question whether a governmental actor's conduct involves discretion of the planning or policy-making type must be narrowly focused on the allegedly negligent conduct, not on whether the actor's conduct is part of some broader governmental policy." *Id.* at 621. "Indeed, we can presume that all governmental employees, in their official duties, act in furtherance of some governmental policy." *Id.* at 621 n.12.

The line of demarcation is between those functions that "rest on the exercise of judgment and discretion and represent planning and policymaking [for which there would be governmental immunity] and those functions which involve the implementation and execution of such governmental policy or planning [for which there would be no governmental immunity]." *Harry Stoller & Co.* v. *Lowell, supra* at 142, quoting *Whitney* v. *Worcester*, 373 Mass. 208, 217 (1977).[5] "If the injury-producing conduct was an integral part of governmental policy making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if

[5]Although *Whitney* v. *Worcester*, 373 Mass. 208 (1977), preceded the enactment of the Massachusetts Tort Claims Act in 1978, St. 1978, c. 512, § 15, it enunciated guiding principles for determining the scope of the discretionary function exception subsequently set forth in G. L. c. 258, § 10 (*b*). See *Horta* v. *Sullivan*, 418 Mass. 615, 620 (1994); *A.L.* v. *Commonwealth*, 402 Mass. 234, 245 (1988).

the case could not be decided without usurping the power and responsibility of either the legislative or executive branch of government, governmental immunity would probably attach." *Horta* v. *Sullivan, supra* at 620, citing *Whitney* v. *Worcester, supra* at 219. However, where the purportedly tortious conduct of the governmental actor relates to "the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities and the governmental entity in question held liable for the injuries resulting from such acts."[6] *Whitney* v. *Worcester, supra* at 218-219.

---

[6]This court has declined to apply the discretionary function exception to governmental tort liability in numerous instances where the conduct at issue did not involve policy making or planning. See, e.g., *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 145-146 (1992) (no immunity where fire fighters chose not to use buildings' sprinkler systems to fight fire and negligently failed to conform to generally accepted firefighting practices); *Dobos* v. *Driscoll*, 404 Mass. 634, 652-653, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989) (no immunity where supervisors' conduct in deciding whether and how to discipline State trooper constituted improper implementation of existing police policy); *A.L.* v. *Commonwealth, supra* at 245-246 (no immunity where probation officer negligently failed to monitor probationer's compliance with policy decisions made by sentencing judge); *Doherty* v. *Belmont*, 396 Mass. 271, 276 (1985) (no immunity where town failed to maintain municipal parking lot in reasonably safe condition); *Kelley* v. *Rossi*, 395 Mass. 659, 665 & n.6 (1985) (no immunity where city physician's treatment of emergency room patient governed by standard of accepted medical practice); *Irwin* v. *Ware*, 392 Mass. 745, 753 (1984) (no immunity where police officer failed to remove intoxicated motorist from roadway in accordance with established statutory provisions); *Whitney* v. *Worcester, supra* at 223-224 (no immunity for teacher's failure to seek medical attention for injured student where only adoption, not implementation, of plan to integrate handicapped students into public schools was discretionary act). See also *Chiao-Yun Ku* v. *Framingham*, 62 Mass. App. Ct. 271, 277-278 (2004) (no immunity where town's supervision of snow removal constituted ministerial act of maintenance, not discretionary act of policy making or planning); *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 612-614 (1996) (city's decision concerning number of chaperons to send on school field trip was discretionary function involving allocation of limited resources, but claim that chaperons were negligent in supervising students was not barred by discretionary function exception because chaperons' conduct did not rise to level of policy making or planning); *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 724 (1991) (city's decision to erect fence between school and abutting railroad tracks was discretionary act, but city's inadequate maintenance of such fence did not entail discretionary function warranting immunity under § 10 [*b*]); *Sanker* v. *Orleans*, 27 Mass. App. Ct. 410, 412-413 (1989) (municipality's decisions

The motion judge properly determined that the town was not entitled to immunity under G. L. c. 258, § 10 (*b*). The thrust of the plaintiff's complaint was that the town negligently had maintained the parking lot by failing adequately to secure the telephone poles, thereby creating an unsafe condition on its public property. As the party moving for summary judgment on a theory of immunity for the performance of a discretionary function, the town had the burden of proving that its decision as to the manner of installation of the telephone poles was the product of policy making or planning considerations. On this record, the town failed to satisfy its burden where there was no evidence that town representatives had considered this issue.

In his deposition, Kevin Paicos, the town administrator and head of the executive loss control committee,[7] testified that the committee decided to use telephone poles as barriers in the parking lot to protect pedestrian safety and to channel vehicular traffic. He stated that the town already had a stockpile of such poles and that no expense associated with using them had been brought to his attention. Paicos acknowledged that the town did not place the poles in the parking lot in order to comply with any zoning bylaw, regulation, or municipal order adopted by the town. He further testified that he did not remember any discussion by the committee as to the fact that the telephone poles could move, he was unaware of any discussion about how the

concerning location of utility poles and design of public roads were discretionary functions, but municipality's failure to prune tree branch overhanging road was not discretionary act). Contrast *Barnett* v. *Lynn*, 433 Mass. 662, 664 (2001) (immunity conferred where city's decision not to erect fence on city property to prevent sledding was based on allocation of limited resources and, as such, was discretionary function); *Pina* v. *Commonwealth*, 400 Mass. 408, 414-415 (1987) (immunity conferred where State employees who evaluated and processed claim for Social Security disability insurance benefits were performing discretionary function); *Patrazza* v. *Commonwealth*, 398 Mass. 464, 469-470 (1986) (immunity conferred where design of highway guardrail and policy implementing its use were encompassed within discretionary function exception of § 10 [*b*]); *Alter* v. *Newton*, 35 Mass. App. Ct. 142, 146 (1993) (immunity conferred where city's decision not to erect fence around school athletic field constituted integral part of governmental policy making or planning); *Wheeler* v. *Boston Hous. Auth.*, 34 Mass. App. Ct. 36, 40 (1993) (immunity conferred where decision regarding security measures in public housing complex constituted discretionary function).

[7]The executive loss control committee "establishe[d] all general safety practices in the town in all areas, whether it [was] school or town property."

poles would be installed, and he had no information as to specifically who placed the telephone poles in the parking area and under what conditions.

We agree with the town that its decision to use an available supply of telephone poles as parking barriers constituted a discretionary function. See *Barnett* v. *Lynn*, 433 Mass. 662, 664 (2001). However, the execution of that established policy, namely the "installation" of the telephone poles, did not fall into the same category. See *Harry Stoller & Co.* v. *Lowell, supra* at 141; *Doherty* v. *Belmont*, 396 Mass. 271, 276 (1985); *Whitney* v. *Worcester, supra* at 223-224; *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 724 (1991); *Sanker* v. *Orleans*, 27 Mass. App. Ct. 410, 412-413 (1989). The town has not demonstrated that "social, political, or economic policy considerations" were involved in any decision not to secure the telephone poles so that they would not move from their designated locations. *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 614 (1996).

Contrary to the town's argument, *Patrazza* v. *Commonwealth*, 398 Mass. 464 (1986), is consistent with our conclusion. In that case, dealing with a Department of Public Works's policy to bury the ends of guardrails only on limited access highways, we stated that "it is clear that the design of the guardrail and the policy implementing its use, the bases of the action for wrongful death, are encompassed within the discretionary acts exception of G. L. c. 258, § 10 (*b*)." *Id.* at 466. Similarly, the town's decision here to place telephone poles in the parking lot to protect pedestrian safety and channel vehicular traffic is rooted in policy making and planning and falls within the purview of the town's discretionary function. It is the execution of that established policy that is not a discretionary act, an issue of no import in *Patrazza*, where the focus of the plaintiff's claim was the Commonwealth's alleged negligence in adopting the policy in the first instance. *Id.* at 467-469. The distinction between policy making or planning, on the one hand, and the carrying out of established policies or plans, on the other hand, is dispositive. Accordingly, we conclude that the town was not entitled to immunity under § 10 (*b*).

2. *G. L. c. 258, § 10* (j). General Laws c. 258, § 10 (*j*), provides that a public employer is not subject to liability under

G. L. c. 258, § 2, for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." "[T]he principal purpose of § 10 (*j*) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party." *Brum* v. *Dartmouth*, 428 Mass. 684, 696 (1999). Here, the town contends that it is immune from liability under § 10 (*j*) because no act or omission by a town employee was the original cause of Greenwood's injuries. Rather, Greenwood's injuries were the harmful consequence of the tortious conduct of a third party, Gregory Woodward. Further, the town argues that it did not commit an "affirmative act" that created a harmful situation because the plaintiff's complaint is predicated on a failure to act, namely, the failure to secure the telephone poles. See *Kent* v. *Commonwealth*, 437 Mass. 312, 318 (2002). The focus of the town's argument is misplaced.

The plain language of the Act provides that the exclusion set forth in § 10 (*j*) shall not apply to "any claim based on negligent maintenance of public property." G. L. c. 258, § 10 (*j*) (3). The Act imposes liability on public employers "in the same manner and to the same extent as a private individual under like circumstances." G. L. c. 258, § 2. See *Doherty* v. *Belmont*, *supra* at 273 (town liable when paying customer fell in negligently maintained parking lot). Thus, the town here must be "treated the same as an owner of a private parking lot for the purposes of liability under G. L. c. 258." *Id.* at 274. See *Jacome* v. *Commonwealth*, 56 Mass. App. Ct. 486, 491 (2002). A private landowner owes a duty of reasonable care to all persons who are lawfully on its premises. See *Doherty* v. *Belmont*, *supra*; *Wheeler* v. *Boston Hous. Auth.*, 34 Mass. App. Ct. 36, 40-41 (1993). The owner or person in control of real property has a duty to maintain the premises in a reasonably safe condition. See *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204 (2000). See also *Jacome* v. *Commonwealth*, *supra* at 491-492 (no cause of action for drowning death based on negligent maintenance of public property under § 10 [*j*] [3] where Commonwealth did not "maintain" ocean).

The parties here have not challenged the fact that the town owned the property at issue or the fact that Greenwood was lawfully on such property when she was struck by the telephone pole and sustained serious injuries. The exception enunciated in § 10 (*j*) (3) is straightforward in stating that harm resulting from negligently maintained public property is not subject to the section's general liability exclusion. The plaintiff has claimed that the town's placement of the telephone poles in the parking lot without properly securing them in a safe manner created an unreasonable risk of harmful consequences to foreseeable persons like Greenwood. Accordingly, we conclude that the town was not entitled to immunity under § 10 (*j*).

3. *G. L. c. 258, § 10 (a).* General Laws c. 258, § 10 (*a*), provides that a public employer is not subject to liability under G. L. c. 258, § 2, for "any claim based upon an act or omission of a public employee when such employee is exercising due care in the execution of any statute or any regulation of a public employer, or any municipal ordinance or by-law, whether or not such statute, regulation, ordinance or by-law is valid." As we have noted, Kevin Paicos testified that the town did not place the telephone poles in the parking lot in order to comply with any zoning bylaw, regulation or municipal order adopted by the town. The town concedes that fact in its brief before this court. Accordingly, we conclude that the town was not entitled to immunity under § 10 (*a*), and we need not consider this issue further.

4. *Conclusion.* The order of the Superior Court judge denying the town's motion for summary judgment is affirmed.

*So ordered.*