Agnes, Peter W., J.
Introduction
The plaintiff, James Gomez (hereinafter “Gomez”), has filed this action seeking damages from the defendant, Paxton Municipal Light Department (hereinafter “Paxton”), for injuries he alleges he sustained on May 9, 2000 when a town utility pole, to which he was installing cable, snapped and came down upon him. Thereafter, Paxton filed a third-party claim against the cable service provider in the area, Charter Communications Entertainment 1, LLC (hereinafter “Charter”) seeking contribution, indemnification, or both pursuant to an aerial license agreement between the Town of Paxton and Greater Worcester Cablevision, Inc., Charter’s predecessor in interest. Pursuant to Mass.R.Civ.P. 56, Paxton has filed a motion for summary judgment as to the Gomez’s claims and as to its indemnification claim against Charter.
Background as to Gomez’s Claims
Viewing the evidence in the light most favorable to the plaintiff, a jury could find the following facts. On May 9, 2000, Gomez and his foreman were installing cable between utilily poles for White Mountain Cable (hereinafter “WMC”) in the Town of Paxton. See Plaintiff’s Opposition to Defendant’s Motion for Summary Judgment, p. 1. Gomez’s role was to stand on the ground and pull the cable taut by means of a lasher device. Id. As Gomez was pulling the cable, the thirty-five-foot utilily pole, known as pole 22C (hereinafter “pole 22C”), broke at the base due to the rotten, ant-infested condition in the base. Id. p. 1-2. As pole 22C came down toward Gomez, he put up his right arm by his hard hat to protect himself. Id. Gomez sustained a severe crush injury to his right — and dominant — hand and right forearm when pole 22C struck him and crushed his hand and arm against his hard hat. Id. p. 2. Gomez’s chest and shoulder areas were also injured by the event. Id.
Pole 22C went into service in 1965.[1] Id. In 1999, a lineman for Paxton, Richard Johnson (hereinafter “Johnson”), was asked by a Paxton supervisor to prepare a list of poles to be replaced. Id. The supervisor did not give Johnson a deadline for this assignment, the first of its type to be conducted in the town. Id. Johnson’s list did not include pole 22C, yet Johnson later recalled in his deposition that pole 22C was in bad condition when he tested it. Id.
Subsequent to the list compiled by Johnson, Paxton typed a list entitled 2000 Pole Replacement List which included some poles not originally designated by Johnson. Id. p. 3. Pole 22C, though not included in Johnson’s list, was designated by another Paxton employee as a category 3, meaning it was of lowest *552 priority to be replaced[2] Id. Gomez claims that Paxton negligently maintained its utility poles and this negligence lead to Gomez’s injuiy. Id.
Background as to Charter’s Claim
Viewed in the light most favorable to the non-moving party, here Charter, a jury could find the following facts. The parties, or their predecessors in interest, entered into an aerial license agreement (hereinafter “the agreement") on December 27, 1993, which was valid for a five-year period and expired on December 27, 1998. See Third Party Defendant’s Opposition to Defendant’s Motion for Summary Judgment, p. 2. An amendment to the agreement, dated October 9, 2001, set forth the same terms of the original agreement. Id. p. 3. A handwritten effective date of June 30, 1999 was inserted in the amendment of the agreement. Id. Paxton did not know why this was done, who did it or when it was done. Id. Charter states that the backdating of the agreement would make it impossible for any insurance company to provide insurance as insurance policies are written for a specific policy period and cannot be retroactively applied. Id. p. 4-5. The amendment to the agreement was not in effect at the time of Gomez’s injuiy on May 9, 2000. Id. p. 3.
Charter argues alternatively, if this court finds that the amendment were to have been in effect, that the terms of the agreement cannot be the basis for Paxton’s motion for summaiy judgment as the parties may not have adhered to their mutual covenants contained in the terms and conditions of the agreement. Id. For example, the parties agreed that Paxton would be responsible for replacing poles which have become insufficient in strength with new ones and that Paxton failed to do this regarding pole 22C. Id. Additionally, the agreement clearly exempts from indemnification any issues that arise from the sole negligence of Paxton. Id. Charter states that Gomez has made no claim against Charter for negligence, only claiming such against Paxton. Id. No evidence establishing negligence by Charter has been presented in the pleadings, save the assertions of opposing counsel, therefore the liability for negligence would lie with Paxton alone. Id. p. 4.
Summaiy Judgment Standard
This court grants summaiy judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law based upon review of the summaiy judgment record. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and the relief will not be granted unless “the summaiy judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summaiy judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summaiy judgment by resting on its “pleadings and mere assertions of disputed facts . . .” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If a case only involves a question of law, a court will grant summaiy judgment to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
Discussion as to Gomez’s Claim
Paxton claims that it is immune from liability under three provisions of the Massachusetts Tort Claims Act. See G.L. chapter 258, sections 10(b), (f), and (j). First, Paxton maintains that the discretionary function exception embodied in G.L.c. 258, § 10(b) bars Gomez’s claim, second, that the provisions of G.L.c. 258, § 10(f) explicitly bar Gomez’s claim, and that the limitation on the liability of a public employer under G.L.c. 258, §10(j) bars Gomez’s claim.
A. G.L.c. 258, § 10(b)
Section 10(b) provides immunity for municipalities regarding:
any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused;
Regarding Paxton’s first claim of immunity, this court must first consider, “whether the governmental actor had any discretion at all as to what course of conduct to follow,” and second, “whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability.” Harry Stoller and Co., Inc. v. City of Lowell, 412 Mass. 139, 141 (1992).
Municipalities clearly have discretion in making decisions about budgeting and allocating funds. However, the Supreme Judicial Court has explained that in enacting § 10(b), the Legislature did not intend to exempt all discretionaiy decisions made by municipal officials. If § 10(b) was interpreted in that manner, it would approximate a return to the doctrine of sovereign immunity. “The discretionaiy function exception is narrow, providing immunity only for discretionary conduct that involves policy making or planning.” Greenwood v. Town of Easton, 444 Mass. 467 (2005). Only when the discretionaiy decision which causes the injuiy has a “high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning,” as *553 opposed to conduct which consists of “carrying out previously established policies or plans,” will the exemption apply. Whitney v. Worcester, 373 Mass 208, 218 (1977). See also Harry Stoller Co. v. City of Lowell, 412 Mass. 139, 142 (1992) (“If the injury-producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the case could not be decided without usurping the power and responsibility of either the legislative or executive branch of government, governmental immunity would probably attach”).
The Town of Paxton was not under a legal obligation to assess the condition of its telephone poles as it did in this case. A study like the one undertaken in this case, with an eye toward developing a plan for the periodic replacement of poles, is not so integral to the power and responsibility of a municipality that it would fall within the bounds of policymaking and planning. However, on the record before this court, there is additional evidence that Paxton made various and inconsistent lists when prioritizing which poles to replace and that there was a delay in the replacement of pole 22C. See Barnett v. City of Lynn, 433 Mass. 662, 664 (2001) (discretionary acts do not include those involving the carrying out of previously established policies or plans).
The alleged delay by the defendant Town in replacing damaged poles does not involve the type of discretionary planning or policy-making which the Legislature intended to make municipalities immune from civil liability under G.L.c. 258. Accord, Greenwood v. Town of Easton, supra, 444 Mass. at 469 (“Here, the town contends that it is immune from the plaintiffs negligence claim under this discretionary function exception to governmental tort liability because its decision to use telephone poles as parking barriers involved policy making and planning, discretionary actions plainly within the purview of § 10(b). Accordingly, the town argues that it was entitled to summary judgment. We disagree.”).
B. G.L.c. 258, § 10(f)
Section 10(f) provides immunity for municipalities regarding:
any claim based upon the failure to inspect, or an inadequate or negligent inspection, of any property, real or personal, to determine whether the property complies with or violates any law, regulation, ordinance or code, or contains a hazard to health or safely, except as otherwise provided.[3]
This section has no application to the facts in this case because it does not afford a municipality any immunity with respect to the inspection or maintenance of its own property. See Twomey v. Commonwealth, 444 Mass. 58, 64 (2005). Thus, it does not preclude claims, as here, arising from the defendant Town’s alleged negligent maintenance of its own property, even though that maintenance may include inspections. See also id. (“If there is any lingering doubt as to whether the Commonwealth is immune from the plaintiffs’ suit, that doubt is put to rest by G.L.c. 258, §10(jj(3), which provides that the Commonwealth has no immunity from “any claim based on negligent maintenance of public property”).
C. G.L.c. 258, §10(j)
Section 10(j) provides immunity for municipalities regarding:
any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation . . . which is not originally caused by the public employer or any other person acting on behalf of the public employer . . .
Paxton’s third claim for immunity is based upon Paxton’s assertion that it was not the “original cause” of Gomez’s harm. “Original cause” means an “ ‘affirmative act’ (not a failure to act) . . . that creates the ‘condition or situation’ that results in harm inflicted by a third party . . .” Jacome v. Commonwealth, 56 Mass.App.Ct. 486, 489 (2002).
Paxton asserts that it is not liable to Gomez based upon the provisions of §10(j). Paxton does not in its summary judgment motion factually argue its position. Rather, Paxton states the law and cites to three cases decided by the Supreme Judicial Court. Paxton does not indicate what it believes to be the “original cause,” the “affirmative act,” the “condition” or “situation.”
The parties have not challenged the fact that Paxton . . . owned pole 22C or the fact that Paxton was aware that Gomez and others, were restringing cable throughout the town of Paxton. The exception enunciated in §10(j)(3) is straightforward in stating that harm resulting from negligently maintained public property is not subject to the section’s general liability exclusion. Paxton improperly reads the exception by asserting that pole 22C was not on public property. The exception reads, “(3) any claim based on negligent maintenance of public property” not on public property (emphasis added).
Gomez has claimed that the town’s failure to replace pole 22C created an unreasonable risk of harmful consequences to foreseeable persons like Gomez. “Tie [Tort Claims] Act imposes liability on public employers in the same manner and to the same extent as a private individual under like circumstances.” Greenwood v. Town of Easton, supra, 444 Mass. at 474, quoting G.L.c. 258, §2. Accordingly, this court concludes that Paxton is not, as a matter of law, entitled to immunity under §10(j).
Discussion as to Charter’s Claim
The defendant Town’s indemnification claim against Charter requires Paxton to establish that its negligence was not a substantial contributing factor in causing harm to the plaintiff. Because there is a material factual dispute as to whether Paxton’s ac *554 tions or inactions were negligent, summary judgment with respect to Charter’s alleged obligation to indemnify Paxton is not proper at this stage of the proceedings.
ORDER
For the foregoing reasons, the defendant/third party plaintiffs motion for summary judgment is DENIED.

 Some of the utility poles in Paxton are owned solely by the Town of Paxton; some are owned solely by the telephone company; and some jointly owned by the two. Pole 22C was jointly owned. Pole 22C was installed on residentially owned property providing communication services to that resident’s home. The joint-ownership status of the utility pole does not affect this court’s decision herein; however, the status may be factually significant for purposes of apportionment of liability, if any.

 The scale was from 1 to 3, indicating the rank of importance for replacement.

 Any claim based on an act or failure to prevent or diminish the harmful consequence of a condition or situation.