Fecteau, Francis R., J.
INTRODUCTION
Plaintiff, Eva Sherman (“Sherman”) brought this negligence complaint against the City of Worcester (“City”) and the Sewer Division of its Department of Public Works (“DPW j. Sherman asserts that the City’s failure to properly respond to, maintain, and repair a sewer main break at her residence proximately caused damages to her personal property. The City argues that because Sherman failed to make an adequate presentment of her claim pursuant to G.L.c. 258, §4, this court should grant summary judgment in its favor. Notwithstanding an inadequate presentment, defendant asserts that it is entitled to summery judgment under the discretionary immunity doctrine of G.L.c. 258, § 10(b) and that Sherman cannot show how the City proximately caused the damages she suffered. For the following reasons, defendants’ motion is ALLOWED.
BACKGROUND
On or about Saturday, October 20,2001, at approximately 10:30 a.m., Sherman noticed that sewerage and water were entering her home located at 21 Dick Drive in Worcester. That same day at approximately 11:05 a.m., the City’s DPW received a telephone call from Sherman notifying them of the problem. The DPWs Sewer Division then dispatched one of its on-duty emergency response teams to Sherman’s residence. Keith Charest (“Charest”), a maintenance and equipment operator/laborer, was the ranking team member of the two-person emergency response team that visited Sherman’s home. After arriving there, Charest determined that a sewer main line was blocked and that a foreman and flusher crew were necessary to remove the blockage. He then called the complaint clerk at DPW and informed him. Thereafter, the clerk identified personnel able to respond to this “after-hours” emergency, and dispatched this team of additional personnel and equipment to Sherman’s home, according to a policy of the department.
After the flusher crew and foreman arrived on scene, it took the crew about two to two and one-half hours to remove the blockage and abate the problem. The corrective repairs to the sewer main line subsequently relieved the sewer back up inside Sherman’s home but damage to personal property therein had already occurred. Sherman claims that the damage to her property was the proximate result of the DPWs failure to timely respond to the sewer break.
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See Mass.R.Civ.P. 56(e). Conclusoiy statements, general denials, and allegations not based on personal knowledge are insufficient to avoid summary judgment. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Rather, the non-moving party-bears the burden of introducing enough countervail *562 ing data to demonstrate the existence of a genuine issue for trial. See Wooster v. Abdow Corp., 46 Mass.App.Ct 665, 673 (1999).
II. Sewer System Maintenance & Repair
G.L.c. 83, §1 governs the construction and maintenance of sewers and drains in the Commonwealth. That statute reads, in relevant part:
A city or town may lay out, construct, maintain and operate a system or systems of common sewers and main drains in public or private ways for a part or the whole of its territory as they adjudge necessary for the public convenience or the public health with such connections and other works as may be required for a system or systems of sewerage and drainage, and sewage treatment and disposal.
G.L.c. 83, §1 (emphasis added). Despite the permissive and discretionary language emphasized above, the case law in this area is very settled as to whether or not the defendant can claim discretionary immunity in this case. Specifically, Massachusetts courts have held on repeated occasions that municipalities are not liable for damages proximately caused by defective sewer system plans. See Lobster Pot of Lowell Inc. u. Lowell, 333 Mass. 31, 33 (1955); Pevearv. Lynn, 249 Mass. 486, 488 (1924). However, municipalities are “responsible for damages which accrue to individuals through negligence in the construction, maintenance or operation of its system of sewers.” Lobster Pot 333 Mass. at 33. Whether immunity can be effectively asserted in an action for negligence then centers on two things: design and construction. In planning a sewer’s design, “public officers [are] acting, not as [government] agents, but in a quasi judicial capacity for the benefit of the general public” therefore entitling them to immunity for their actions. Pevear, 249 Mass. at 488. In contrast, once the sewer is constructed, “it becomes the property of the municipality, no one else can interfere with it and its care and continuance devolve wholly upon the municipality through such agents as it may select.” Id.
The City asserts that it is entitled to immunity under the discretionary function doctrine pursuant to G.L.c. 258, §10(b). That section “exempts from liability any claim based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee acting within the scope of his office or employment, whether or not the discretion involved is abused.” Patrazza v. Commonwealth, 398 Mass. 464, 467 (1986). Discretionary acts include those pertaining to judgment and weighing alternatives necessary to public policy and planning. Id.
The applicability of the discretionary function doctrine requires a two-part analysis. The first step is to determine “whether the governmental actor had any discretion ... to do or not to do what the plaintiff claims caused [the] harm.” Greenwood v. Town of Easton, 444 Mass. 467, 469 (2005), citing Harry Stoller & Co., Inc. v. Lowell, 412 Mass. 139, 141 (1992). If no government discretion existed and instead the action was guided by a “statute, regulation or established agency policy” then the discretionary function doctrine has no applicability in deciding the case. Id. The second step in the analysis requires the court to make a determination whether the actor’s conduct was the kind of discretion contemplated by § 10(b). Id. at 470. Discretionary conduct involving policy making and planning are acts contemplated by the statute. Id.
After careful examination of the record, there is no dispute between the parties that the City indeed had an emergency response policy to resulting sewer damage within the municipality. Moreover, neither party disputes that the City owed plaintiff a duty to maintain an already established system of sewers. See Lobster Pot, 333 Mass. at 33; Pevear, 249 Mass. at 488. The issue turns then on whether the City, through its agency, the DPW, had the discretion at the outset to make and implement that policy. Certainly, G.L.c. 83, § 1 confers that right to the City insofar as it states that the “city . . . may lay out, construct, maintain and operate a system or systems of common sewers and main drains in public or private ways ... as they adjudge necessary for the public convenience or the public health.” Id. (emphasis added). Thus, the City determined an emergency response policy was necessary in order to maintain and operate its already established sewer system via the DPW. On the other hand, the City’s discretion in creating the policy is not a basis per se for asserting that immunity exists when applying the case law. Instead, the case law supports that the City had no discretion in whether it would react to the sewer damage or not; it was responsible for the maintenance, operation, and repair of the sewer main line without exception. See Lobster Pot 333 Mass. at 33; Pevear, 249 Mass. at 488. Thus, whether an emergency policy was in place is irrelevant. Certainly the City, through its DPW, could create internal ministerial policies in how to handle sewer main breaks, but having the discretion to create the policy itself did not relieve the agency from its duty to maintain, repair and effectively operate the system. See id.
By eliminating the application of the discretionary immunity doctrine to this case, the court finds that defendant still prevails on summary judgment because plaintiff has failed to meet her burden of showing that a genuine issue of material fact exists for trial. Specifically, she cannot prove how the City breached its duty to her in effectively maintaining and operating its sewer system; nor has she shown how such a breach, if any, proximately caused her damages. As stated above, there is no dispute in the record that an emergency policy of some kind existed at the DPW for sewer breaks. Both parties rely on the deposition testimonies of Matthew Labovites (“Labovites”), Assistant Commissioner of Operations for the DPW, and Charest, as the first emergency responder to the scene. Both men testified as to the existence of a policy. In sum, Labovites testified that in the event of a sewer or water break emergency, a call *563 came into the DPW to a clerk who then was responsible for notifying a three-person team from three separate on-call rosters located at the DPW: a supervisor/foreman; a maintenance and equipment operator; and a laborer. Similarly, Charest testified that he responded to the call at plaintiffs residence on the day of the sewer break after the clerk called him. Charest further stated that he and another man had been present in an office on Shrewsbury Street specifically to respond to crises like the one at Sherman’s residence. Charest and his fellow teammate went to Sherman’s residence, diagnosed the problem and the need for a special flusher crew, and the problem was abated therefrom as quickly as the flusher crew could be located and dispatched, unfortunately though, not before damage being caused to the plaintiffs property. However, while the plaintiff provides suggestion as to the cause of the sewer line blockage, she does not provide any evidence in this motion record that the blockage was actually and proximately caused by the city’s negligence in its operation and/or maintenance of the sewer line.
Based on these facts, there are no genuine issues of material[2] fact for the jury to decide. First, it is not material whether a two-person or a three-person team was initially sent to Sherman’s residence, nor that the response time would have been any different had the policy Labovites described been followed, compared to the way in which Charest described it occurred. The court infers that it likely would have taken more time to call in a three-person team from employees who were off-duty and thereby not close by and in a central location, unlike Charest and his teammate who were on-call for such emergencies at the DPWs Shrewsbury Street office. Therefore, apart from a discussion as to the discretion of the municipality in formulating an emergency-response, after-hours policy, the evidence to support how the City breached its duty to plaintiff for her negligence claim is lacking. Instead, Sherman’s reliance on Labovites’ and Charest’s deposition testimonies does not assist her position because both men testified as to the existence of a policy that sought to minimize the emergency response time to any sewer and water main damage that occurred within the city. Moreover, Labovites testified that by dispatching Charest’s team to Sherman’s residence so quickly to diagnose the problem, the DPW reacted within the acceptable emergency response time range of 45 minutes to several hours. Rather, her complaint appears to center on an allegation that the city was negligent in the formation of its emergency response policy, inapposite to situations where a plaintiffs damages were proximately caused by inaction on the part of the government agency; therefore, upon consideration of the motion record, summary judgment must enter for defendant.
ORDER
For the reasons stated herein, it is hereby ordered that Defendants’ Motion for Summary Judgment pursuant to Mass.R.Civ.P. 56 be ALLOWED.[3]

Labovites’ and Charest’s testimonies differ as to how the policy was actually implemented insofar as a two-person versus a three-person team was initially sent to Sherman’s residence and not entirely in accordance with the supposed emergency response policy. However, the court finds the disparity not to be a material one for the jury.

In examining and disposing of this case on the underlying merits, the court determines that whether or not plaintiff made an adequate presentment pursuant to G.L.c. 258, §4 is of no consequence. In the event that presentment becomes both a viable issue and one of significance, in the view of the court, the presentment is sufficient to place the city on fair notice of claims of negligent maintenance of the sewer line and of a unnecessarily slow response to the plaintiffs emergent situation, sounding also in negligence. As far as the defendant’s contention that the presentment letter is inadequate to give fair notice of the plaintiffs claim of negligent design is concerned, however, the court agrees.