NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-2                                              Appeals Court

        RICHARD DUDLEY, JR.  vs.  MASSACHUSETTS STATE POLICE.

                           No. 16-P-2.

        Bristol.      December 1, 2016. - June 1, 2017.

          Present:  Cypher, Maldonado, & Blake, JJ.[1]


Massachusetts Tort Claims Act.  Governmental
    Immunity.  Dog.  Police, Negligence.  Negligence,
    Governmental immunity, Police.  Practice, Civil, Summary
    judgment.



        Civil action commenced in the Superior Court Department on
February 1, 2013.

        The case was heard by William F. Sullivan, J., on a motion
for summary judgment.


        Jason R. Markle for the plaintiff.
        Andrew W. Koster, Assistant Attorney General, for the
defendant.


        MALDONADO, J.  The plaintiff, Richard Dudley, Jr.,

commenced this negligence action, pursuant to the Massachusetts

_____

        [1] Justice Cypher participated in the deliberation of this
case while an Associate Justice of this court, prior to her
appointment as an Associate Justice of the Supreme Judicial
Court.

Tort Claims Act (Act), G. L. c. 258, seeking damages from the defendant, Massachusetts State Police (State police), for injuries he suffered as a result of being attacked, in a public parking lot, by a trained police dog. Moments before the attack occurred, State Trooper Edward T. Blackwell, an experienced police canine handler, had been in pursuit of a criminal suspect who fled, on foot, taking a circuitous route through that parking lot.

Dudley sued the State police, a public employer and agent of the Commonwealth,[2] alleging that Trooper Blackwell's conduct, in releasing the police dog to apprehend a suspect in a public space, where the presence of others would be expected, created a foreseeable and substantial risk of harm to an innocent bystander.

The State police answered the complaint, engaged in discovery, and then filed a motion for summary judgment, based on the ground of sovereign immunity under G. L. c. 258. Following a hearing, a judge of the Superior Court allowed the State police's motion, ruling that Dudley's negligence claim was barred by the immunity provisions of the Act, §§ 10(b) and (j). Dudley appeals from the separate and final judgment. See Mass.R.Civ.P.54(b), 365 Mass. 820 (1974). We reverse.

---

[2] His claims against the criminal suspect (William P. Monopoli) and an automobile insurer are not at issue in this appeal.

1.  Background.  The chase.  In the early afternoon of May 6, 2011, William P. Monopoli led several State police troopers on a high-speed motor vehicle chase, which began in Boston and ended in West Bridgewater.

While speeding down the highway, Monopoli abruptly pulled his truck off the road onto an exit ramp.  At the top of the ramp, Monopoli lost control of his truck, crossed the roadway's double yellow lines, and crashed into a guardrail or curb.  He then exited his truck and quickly fled on foot, jumping over a fence into a park and ride commuter lot.  Trooper Blackwell, who was following the suspect in a State police cruiser, pulled behind Monopoli's truck.

The bite.  Trooper Blackwell stepped outside of the cruiser, with his trained patrol dog, Jager,[3] on a leash. Trooper Blackwell yelled to Monopoli and ordered him to give himself up, adding that, if he did not do so, the dog would be sent after him.  Monopoli did not stop.  He scaled over the fence into the commuter parking lot, out of the Trooper's immediate vision.  Trooper Blackwell, knowing the lot was more than half full, commanded Jager to apprehend and he let go of the dog's leash, releasing him toward the parking lot.  Jager hopped the fence, but in the midst of the parked cars, he, as did Blackwell, lost sight of Monopoli.

---

[3] A German shepherd weighing about eighty-two pounds.

Meanwhile, Dudley, while on his way home from work, was dropping his coworker, Shiller, off at the commuter parking lot, heard the crash of a car. The two men exited Dudley's truck. Dudley observed Monopoli as he zig-zagged through the parking lot toward a structure situated outside the lot. At about this same time, Trooper Blackwell came onto the scene. Pointing towards where Monopoli had fled, the two men yelled, "He went that way." Jager's attention focused on Dudley and Schiller. Trooper Blackwell, who had also lost sight of Jager, had now regained sight of him. Jager was about fifteen feet from Dudley when he jumped up and bit Dudley in the stomach. Meanwhile, Trooper Blackwell yelled for Dudley to get inside the truck and lock the doors. Dudley tried to dive in the interior compartment of his truck headfirst. He made it halfway in but Jager clenched onto Dudley's leg and dragged him out of the vehicle. Trooper Blackwell commanded Jager to "release," and Jager complied.[4] Trooper Blackwell then took hold of Jager's leash and continued his pursuit of Monopoli. Other officers had arrived by then, and within a short time, they apprehended Monopoli outside the periphery of the parking lot. Trooper Blackwell returned to Dudley, who was taken to a local hospital

---

[4] The use of force by the State police is governed by written policies and procedures. A trooper and his State police dog operate as a team and, when given the order to apprehend a suspect, the dog will "bite and hold" the suspect.

by ambulance, where he was treated for his wounds. Dudley was discharged the same day.

2. Discussion. "In reviewing a grant of summary judgment, 'we assess the record de novo and take the facts, together with all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.'" Pugsley v. Police Dept. of Boston, 472 Mass. 367, 370-371 (2015), quoting from Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 318 (2014). Here, we review the judge's grant of immunity under the Act, G. L. c. 258.

The Act provide[s] "a comprehensive and uniform regime of tort liability" for public employers." Morrissey v. New England Deaconess Assoc. -- Abundant Life Communities, Inc., 458 Mass. 580, 588 (2010). See Greenwood v. Easton, 444 Mass. 467, 469-471 (2005). As is pertinent in this case, the Act exempts a public employer from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office of employment, whether or not the discretion involved is abused." G. L. c. 258, § 10(b). The parties agree that the State police is a public employer entitled to the protections of the discretionary function exemption in § 10(b), which, if applicable in this case, would immunize it from liability.

In deciding whether § 10(b)'s discretionary function exemption precludes a plaintiff's tort claim, we first look to "whether the governmental actor had any discretion . . . to do or not to do what the plaintiff claims caused [the] harm."  Greenwood, supra at 469, quoting from Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992).

"[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, [§ 10(b)'s] discretionary function exception to government liability has no role to play in . . . the case."  Ibid.  Here, Dudley cannot reasonably contest the State police's assertion that the use of the trained police canine, Jager, was not prescribed by a statute, regulation, or established agency practice.  The State police's contention, at least with respect to the first prong of the Greenwood/Harry Stoller test, is aided by our opinion in Audette v. Commonwealth, 63 Mass. App. Ct. 727 (2005), which held that State police canine handlers did have "discretion" as to the course of conduct to follow in the police canine's training and use in police operational activities.  Id. at 731.  As was true with a similar State police general order in Audette, the State police's general order for canine units (effective November 5, 2008) gives discretion to its canine handlers for determining "whether a situation justifies canine use and the appropriate

tactical measures that should be taken."  We turn, then, to the second (and final) step in deciding whether § 10(b)'s discretionary function exemption applies.  In this step we must determine "whether the discretion that the [governmental] actor had is that kind of discretion for which § 10(b) provides immunity from liability."  Greenwood, supra at 470, quoting from Harry Stoller, supra at 141.  The essential measure, under governing case precedent, is whether the governmental actor's conduct, i.e., Trooper Blackwell's act of releasing Jager to apprehend the suspect in a moderate to heavily occupied commuter parking lot, involved discretionary activity of the "planning or policy-making type" that is immunized under § 10(b), as opposed to particular conduct that involves the "implementation" of government policy, for which there is no immunity.  Ibid.

In our view, particularly at the summary judgment stage, we cannot say Trooper Blackwell's injury producing conduct of commanding and releasing Jager to apprehend a criminal suspect involved the use of planning or policy making discretion. Rather, it was conduct that carried out or implemented the State police's general policy for police canine use in the field. Where, as here, the allegedly tortious conduct of the governmental actor concerns the "carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to

private individuals or entities."  Greenwood, supra at 471,
quoting from Whitney v. Worcester, 373 Mass. 208, 218-219
(1977).

    We reject the State police's contention that Audette
controls the result in this case.  In Audette, unlike the
situation presented here, a trained State police canine was off
leash during a motor vehicle search for contraband when he
attacked the victim when the police handler neither ordered an
attack nor an apprehension.  See Audette, supra at 729.  In our
view, that is significantly different from the situation here,
where a trained, experienced police canine handler ordered a
police dog to apprehend another individual, that is to bite and
hold a person, in a moderate to heavily occupied public parking
lot.  It is immaterial that Jager had never attacked anyone
without a command from his handler because, here, Jager was
commanded to attack.  He was ordered to apprehend, and that
order contemplated Jager's hunting down, biting, and holding an
individual, which is precisely what Jager did to Dudley.

    The State police is not assisted by the governmental
immunity provision set forth in § 10(j) either, because § 10(j)
does not preclude suit where the governmental actor is an
"original cause" in creating the harmful condition that resulted
in injury to the plaintiff.  Kent v. Commonwealth, 437 Mass.
312, 318 (2002).  See Serrell vs. Franklin County, 47 Mass. App.

Ct. 400, 405-406 (1999), where § 10(j) did not bar recovery for the affirmative actions of correction officers, who, while intervening in a fight, struck and injured the plaintiff.  The same is true here.  Trooper Blackwell, while trying to capture a fleeing suspect, ordered and released Jager, in a moderate to heavily occupied parking lot, to attack a suspect and, in doing so, the Trooper created the harmful condition that resulted in Dudley's injury.  Accord Gennari v. Reading Pub. Sch., 77 Mass. App. Ct. 762, 764 (2010) (§ 10[j] did not provide immunity where school principal ordered recess in a concrete playground and, therefore, created the situation in which a child would be pushed and fall onto the concrete while playing tag).  The judgment is vacated, and the case is remanded to the Superior Court for trial consistent with this opinion.

So ordered.