DONNA BARNETT, administratrix,[1] & others[2] vs. CITY OF LYNN.

Essex. February 6, 2001. - April 9, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Governmental Immunity. Massachusetts Tort Claims Act. Negligence,*
Municipality. *Municipal Corporations,* Liability for tort.

A municipality's decision not to erect a seasonal fence or barrier or to remove
snow to prevent children from sledding on snow-covered stairs leading
from a playground and historic site down to a sidewalk on a well-traveled
street, was a discretionary function under G. L. c. 258, § 10 (*b*), of the
Massachusetts Tort Claims Act [663-666], and where the danger of sled-
ding down the stairs was open and obvious the municipality had no duty to
post warning signs [666-667]. IRELAND, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on
January 8, 1998.

The case was heard by *Nancy S. Merrick*, J., on a motion for
summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Chris A. Milne* for the plaintiffs.

*Richard L. Vitali* (*James Lamanna* with him) for the
defendant.

COWIN, J. The plaintiff filed this tort action in the Superior
Court against the city of Lynn (city) for the alleged wrongful
death of Crystal Valezquez (Crystal) and injuries sustained by
Philip Valezquez (Philip).[3] The underlying facts are not in
dispute. On January 6, 1996, eleven year old Crystal and her
twelve year old brother Philip were sledding on snow-covered
stairs at High Rock Tower in Lynn. The stairs provided

---

[1]Of the estate of Crystal Valezquez.

[2]Philip Valezquez and Michael Barnett, by their mother, Donna Barnett; and
Donna Barnett, individually. We shall refer to a single plaintiff.

[3]The plaintiff also brought additional tort claims that are not relevant here.

pedestrian access from the High Rock Tower playground and historical site to Essex Street, a well-traveled road. When the children reached the bottom of the stairs on a makeshift sled, they hit a snow bank at the edge of the sidewalk. The snow bank acted as a jump, which led into the street, and caused the children to become airborne. They were struck in midair by a passing motor vehicle. Crystal was pronounced dead at the scene of the accident. Philip survived, but suffered serious physical injuries.

High Rock Tower, including the stairs leading to Essex Street, is owned by the city. The historical site is closed during the winter months, but the playground remains open. The city does not shovel, salt, or sand the playground or the basketball court located at the playground.

The plaintiff alleges that the city was negligent for failing to (1) erect a fence or other barrier to prevent sledding; (2) shovel, salt, or sand the steps; or (3) post signs warning about the danger of sledding on the stairs. The city filed a motion for summary judgment claiming, inter alia, that it was exempt from liability under the discretionary function exception to governmental tort liability pursuant to § 10 (*b*) of the Massachusetts Tort Claims Act, G. L. c. 258. A judge in the Superior Court agreed and allowed the city's motion.[4] The plaintiff appealed, and we granted her application for direct appellate review. We affirm the judgment.

General Laws c. 258, § 10 (*b*), exempts from liability "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." To determine whether the plaintiff's claims are barred by the discretionary function exception, we ask first "whether the governmental actor had any discretion at all as to what course of conduct to follow." *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992). "All the first step involves is a determination whether the actor had any discretion to do or not

---

[4]The Superior Court judge also ruled that the evidence did not support the plaintiff's claim that the city had created an attractive nuisance under G. L. c. 231, § 85Q. The plaintiff has not challenged that ruling on appeal.

to do what the plaintiff claims caused him harm." *Id.* Here, the city had discretion in determining whether to erect a barrier, remove snow from the stairs, or post warning signs. There is no statute, regulation, or established agency practice that prescribes a course of conduct that the city must have followed with respect to snow accumulation. See *id.*

"The second and far more difficult step is to determine whether the discretion that the actor had is that kind of discretion for which § 10 (*b*) provides immunity from liability." *Id.* Generally, such discretionary conduct is "characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning." *Patrazza* v. *Commonwealth*, 398 Mass. 464, 467 (1986), quoting *Whitney* v. *Worcester*, 373 Mass. 208, 218 (1977). "Where there is room for policy judgment and decision there is discretion." *Patrazza* v. *Commonwealth, supra* at 469. Discretionary acts, however, do not include those involving the "carrying out of previously established policies or plans." *Whitney* v. *Worcester, supra.*

In this case, the city maintains that its decision not to erect a fence or other barrier was based on a determination of allocation of limited resources. Such a decision, the city argues, is protected by the discretionary function. We agree. A determination concerning whether to incur the cost of constructing a barrier at the top or bottom of the stairs is "an integral part of governmental policymaking or planning." *Harry Stoller & Co.* v. *Lowell, supra* at 142, citing *Whitney* v. *Worcester, supra* at 219. The city has discretion in deciding how best to expend its resources in order to provide safe and secure conditions. A decision not to erect a barrier at this location falls within that discretion. See *Alter* v. *Newton*, 35 Mass. App. Ct. 142, 146-147 (1993) (decision not to erect fence was policy decision); *Gage* v. *Westfield*, 26 Mass. App. Ct. 681, 685-686 (1988) (failure to erect barrier to separate playground from other city property was discretionary). Cf. *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 724 (1991) (while decision whether to erect fence is discretionary, "the maintenance of or failure to maintain a fence after its erection does not entail a discretionary function").

The city further asserts that a decision whether to shovel,

salt, or sand a parcel of public property involves social, political, and economic considerations. According to an uncontroverted affidavit of the acting commissioner of the city's department of public works, the city does not have the financial ability to remove snow from all public property. Because there are fewer visitors to the High Rock Tower area during the winter, the city determined that the cost of providing snow removal services outweighed the need to have the stairs free of snow. Thus, it chose to remove snow from public property that provides access to schools and municipal buildings, rather than from stairs used less frequently in the winter months. In addition, snow on the stairs would have to be removed manually, increasing the cost to the city for extra personnel to shovel, salt, and sand the stairs. Balancing the need for snow removal with the available resources and deciding how to allocate such resources involves a "high degree of discretion and judgment" that a court cannot review "without usurping the power and responsibility of the . . . executive branch[]." *Whitney* v. *Worcester, supra* at 218, 219, quoting *Spencer* v. *General Hosp.,* 425 F.2d 479, 488 (D.C. Cir. 1969) (Wright, J., concurring). ("To inquire into such decisions in a tort suit might 'jeopardiz[e] the quality and efficiency of government itself,' and endanger the creative exercise of political discretion and judgment through 'the inhibiting influence of potential legal liability asserted with the advantage of hindsight' "). See *Patrazza* v. *Commonwealth, supra* at 467-469 (Commonwealth exempt from liability because decision to leave guardrail ends unburied except on limited access highways was discretionary); *Wheeler* v. *Boston Hous. Auth.,* 34 Mass. App. Ct. 36, 40-41 (1993) (decision regarding what security protection to provide at housing development was discretionary). Cf. *Irwin* v. *Ware,* 392 Mass. 745, 753 (1984) (police officers' failure to detain intoxicated motorist was not decision exempt from liability).

The plaintiff maintains that, prior to the accident, the city had notice that children used the stairs for sledding. Further, the plaintiff notes that immediately after the accident the city sanded

the stairs to prevent other children from sliding down.[5] However, it is irrelevant whether the city's decision was an abuse of discretion, as the exemption extends to circumstances where the public employer "abused" its discretion. G. L. c. 258, § 10 (*b*). Thus, even if the city's decision were ill advised or unreasonable, G. L. c. 258, § 10 (*b*), would bar the plaintiff's action. See *Patrazza* v. *Commonwealth, supra* at 470 n.3, and cases cited.

The plaintiff also attempts to characterize the city's conduct as a failure to maintain its public property. She seeks support from *Doherty* v. *Belmont*, 396 Mass. 271, 276 (1985), where we held that the town's failure to maintain a parking lot by leaving the metal stump of a parking meter protruding slightly above the ground was not protected discretionary conduct. The *Doherty* case is distinguishable. The relevant inquiry in *Doherty* was "not whether the decision to remove the parking meters constituted a discretionary function under § 10 (*b*), but rather whether the maintenance of the parking lot in furtherance of this decision falls within the exemption from liability." *Id.* The present case would be similar to the *Doherty* case had the city decided to erect a fence and then negligently maintained it, or decided to remove the snow but acted negligently in its shoveling, salting, or sanding. See *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 724 (1991). That is not the case before us. The relevant issue here is the decision not to erect a fence or to remove snow, a decision protected under the discretionary function exception.

The plaintiff argues that the failure to post warning signs in this case does not rise to the level of policymaking or planning. We need not resolve this question, however, because the danger of sledding down the snow-covered stairs was open and obvious. "Landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204

---

[5]Evidence of the city's sanding the stairs following the accident would be inadmissible as a subsequent remedial measure. See P.J. Liacos, Massachusetts Evidence § 4.5, at 184 (7th ed. 1999) ("the fact that . . . safety measures were taken after an accident is not admissible as proof of negligence"); W.G. Young, J.R. Pollets, & C. Poreda, Evidence § 407.1, at 222 (2d ed. 1998) (same).

(2000) (danger of diving headfirst into shallow end of swimming pool was open and obvious). See *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 842 (1987), cert. denied, 484 U.S. 1066 (1988) (defendant had no duty to post warning signs where average fifteen year old boy would be aware that other motor vehicles might be driven into gasoline station). Common sense dictates that the danger of sledding down stairs leading to a road well traveled by motor vehicles would be open and obvious even to an eleven or twelve year old child exercising reasonable care for his or her own safety.[6] Accordingly, as a matter of law, the city had no duty to post warning signs and thus could not be liable for the plaintiff's injuries. We affirm the judgment of the Superior Court granting the city's motion for summary judgment.

*So ordered.*

IRELAND, J. (concurring). I do not disagree that our result is compelled by the language of G. L. c. 258, § 10 (*b*). Nonetheless, I write separately to voice my concern that, as in *Brum* v. *Dartmouth*, 428 Mass. 684, 708-710 (1999) (Ireland, J., concurring), city officials are effectively immunized from the tragic results arising out of their "use of discretion." See *DeShaney* v. *Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989). Once again, those who could have remedied a known danger are relieved of legal responsibility under the shield of the Massachusetts Tort Claims Act, while a family is left to grieve over a young life cut short.

Be it matters of school safety or snow removal, public entities in Massachusetts will continually confront choices that affect our children. In making those tough decisions, I, by no means, intend to hold policy makers and officials to a standard of perfection; indeed, they are not guarantors. See *Brum* v. *Dartmouth*, *supra* at 710 (Ireland, J., concurring). Rather, I write to say, "There must be change . . . in the law . . . that

---

[6]Although the inquiry is an objective one, see *O'Sullivan* v. *Shaw*, 431 Mass. 201, 209 (2000), we note that Philip admitted that he knew that sledding down the stairs was dangerous.

balances compensation and public immunity in light of evolving social values . . . ." Note, *Brum* v. *Dartmouth* and the Public Duty Rule: Navigating an Interpretive Quagmire, 41 B.C. L. Rev. 383, 462 (2000). Mindful that such change "must not come in the form of tortured judicial analyses that twist and turn the law to make it fit a particular circumstance," *id.*, I again invite the Legislature to reconsider the current statutory framework in light of the consequences it has wrought.

I believe city officials should "be expected to take reasonable measures to protect children when they have advance notice of danger," *Brum* v. *Dartmouth, supra* at 710 (Ireland, J., concurring), even if the current law does not impose such a duty. Here, city officials were on notice that, just two days prior to the fatal accident, another child slid down the snow on the very same steps, and was catapulted into the street and hit by an automobile. Indeed, these steps were a well-known sledding location and had been used as such for decades. Given this forewarning, as well as the city's reaction after the fact, i.e., the steps were sanded later that same day and fenced off shortly thereafter, the city's "discretion" is particularly suspect. Until their exercise of discretion is subject to review for abuse, however, public entities will continue to play the trump card that is the Massachusetts Tort Claims Act, and escape legal responsibility for their willingness to compromise children's safety.