JOSEPH E. TWOMEY & another,[1] coadministrators,[2] vs.
COMMONWEALTH.

Middlesex. March 10, 2005. - April 20, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Negligence,* Stop sign. *Commonwealth,* Claim against. *Way,* Public: stop sign.
*Municipal Corporations,* Stop sign. *Governmental Immunity.*

In a wrongful death action against the Commonwealth alleging that the Mas-
sachusetts Highway Department (department) had a statutory duty to ensure
that a traffic sign (owned and maintained by the department but situated on
property owned by a town) remained clear of overgrowth, the judge
properly denied the Commonwealth's motion for summary judgment,
where G. L. c. 85, § 2, directs the department to erect and maintain such
signs, and where the fact that the town had an obligation to maintain the
property on which the sign was located did not negate the existence of the
department's duty with respect to the sign; moreover, notwithstanding
G. L. c. 87, §§ 3 and 5 (which provide that a town tree warden or deputy
has the exclusive authority to trim or remove shade trees and bushes
located on town land), in light of the fundamental legislative concern for
the traveling public, the department could take it on itself to trim any foli-
age obscuring a traffic sign located on town land. [61-63]
In a wrongful death action against the Commonwealth alleging that the Mas-
sachusetts Highway Department (department) had a statutory duty to ensure
that a traffic sign (owned and maintained by the department but situated on
property owned by a town) remained clear of overgrowth, the judge
properly denied the Commonwealth's motion for summary judgment,
where G. L. c. 258, § 10 (*f*), did not grant the Commonwealth immunity
arising from the negligent maintenance of its own property. [63-64]

CIVIL ACTION commenced in the Superior Court Department on
December 10, 1999.

The case was heard by *Wendie I. Gershengorn,* J., on a mo-
tion for summary judgment, and a motion for reconsideration
was also heard by her.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

[1]Gilda A. Twomey.
[2]Of the estate of Peter M. Twomey.

*Rosemary Connolly*, Assistant Attorney General, for the Commonwealth.

*Charles E. Vander Linden* for the plaintiffs.

GREANEY, J. We transferred this case here on our own motion to consider whether the Commonwealth's duty to maintain a stop sign erected, pursuant to G. L. c. 85, § 2, by the Massachusetts Highway Department (department) on property owned by the town of Westford (town), includes the duty to ensure that the sign is visible and not obstructed by surrounding foliage and, if such a duty exists, whether provisions of G. L. c. 258, § 10 (*f*), shield the Commonwealth from liability for its negligent performance of that duty. The plaintiffs' son, Peter M. Twomey, was killed in a collision after the driver of the vehicle in which he was a passenger failed to stop at a stop sign before entering the intersection of Concord Road (also known as Route 225), a road that is owned and maintained by the town, and Power Road, a State highway owned and maintained by the Commonwealth. The plaintiffs assert (and we accept as true for purposes of this opinion) that the fatal collision occurred because trees and brush surrounding the stop sign obscured the sign from view.

As coadministrators of their son's estate, the plaintiffs brought a wrongful death action against the Commonwealth in the Superior Court.[3] The complaint alleged that the Commonwealth had a statutory duty to ensure that the sign remained clear of overgrowth and that its failure to do so constituted negligence. The Commonwealth responded with a motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, summary judgment, denying any obligation on its part to cut trees or bushes surrounding a sign on town property and asserting, moreover, that G. L. c. 87, §§ 3 and 5, prohibit, as a matter of law, anyone other than a town tree warden from doing so.[4] After a hearing, the judge (who properly treated the motion as

---

[3]The town of Westford, originally named as a defendant, settled with the plaintiffs and is no longer a party.

[4]The Commonwealth also argued that any claim based on negligent design of the intersection was barred by the discretionary function exception, G. L. c. 258, § 10 (*b*), of the Massachusetts Tort Claims Act. The Commonwealth now posits that the judge's express ruling that "[t]he [S]tate is open to suit in

one seeking summary judgment) concluded that the Commonwealth's authority, under G. L. c. 85, § 2, to "erect and maintain" traffic signs imposes on the Commonwealth a duty to inspect such signs erected on town land to ensure that they are free from overhanging foliage and, if necessary, to order the town to trim the foliage. Accordingly, the judge denied the Commonwealth's motion. The Commonwealth then filed a motion for reconsideration, asserting, for the first time, that immunity provisions contained in the Massachusetts Tort Claims Act, G. L. c. 258, § 10 (*f*), shield it from liability arising out of any "failure to inspect."[5] The motion was denied without comment, and the Commonwealth was allowed to pursue this interlocutory appeal. See *Brum* v. *Dartmouth*, 428 Mass. 684, 687 (1999). For reasons that follow, we affirm the judge's orders denying the motions for summary judgment and for reconsideration.

1. The facts are undisputed for purposes of this appeal.[6] In the summer of 1997, Peter Twomey had just graduated from high school and planned to enter college in the fall. On the morning of July 15, Peter was working as a house painter in the town of Concord. Peter and a coworker were instructed to leave work early due to a light rain that was falling, and the two men set off in the coworker's vehicle, a Ford Mustang GT, for Peter's home in the nearby town of Groton. At approximately 9 A.M., the Mustang was traveling west on Concord Road toward the intersection with Power Road. A stop sign on Concord Road that controlled traffic entering the intersection normally instructed traffic to stop before crossing Power Road. Although the town routinely maintained the foliage around the sign, on that day, the sign was obstructed by foliage. Peter's coworker continued into the intersection without stopping and, once in the intersection, was unable to avoid a vehicle approaching on

negligence for stop sign maintenance" negates the plaintiffs' claim of negligent design and, therefore, does not pursue its claim of immunity based on § 10 (*b*).

[5]The plaintiffs do not assert that the Commonwealth has waived this argument by failing to raise it as part of its motion for summary judgment.

[6]The Commonwealth reserves its right to argue at trial, among other issues, that the stop sign was visible to drivers traveling west on Concord Road on the day of the accident and, even if it was not, any brush obscuring the stop sign in question was not the proximate cause of the fatal accident.

Power Road from the right. Peter was killed in the ensuing collision. The coworker testified at a deposition that, although he saw two signs on Concord Road warning of the approaching intersection, he never saw the stop sign. The Commonwealth admits that, "in the year 1997, [the department] did not inspect Concord Road . . . for overgrowths of foliage or brush."

2. The Commonwealth concedes the department's statutory duty to maintain the stop sign in question and appears to concede as well that its duty to maintain the sign includes an obligation to ensure that there are no defects that would render the sign unsafe. It contends, however, that the town, as the landowner and owner of Concord Road, already had a continuing duty of reasonable care to eliminate any overgrowth of foliage blocking the sign, and, further, that the language of G. L. c. 87, §§ 3 and 5, providing that a town tree warden (or a deputy) is the only official who may trim or remove shade trees and bushes located on town land, effectively prohibited any department employee from cutting the foliage, even if the employee knew (or should have known) that overgrowing foliage posed a risk to the traveling public. According to the Commonwealth, to require those employees to inspect trees and brush surrounding all signs placed on town land, and then to require them to notify town officials of their duty to take remedial action when overgrowing foliage obscures a sign's visibility, would be an "unwieldy and an unwarranted burden" on the Commonwealth. We disagree.

General Laws c. 85, § 2, directs the department to "erect and maintain on state highways and on ways leading thereto and therefrom . . . warning signs . . . as it may deem necessary for promoting the public safety and convenience." The Commonwealth concedes, as it must, that "[a]nything in the state or condition of a highway which renders it unsafe for ordinary travel is a defect or want of repair." *Valvoline Oil Co.* v. *Winthrop*, 235 Mass. 515, 521 (1920). This court has interpreted broadly the definition of a defect. See *Huff* v. *Holyoke*, 386 Mass. 582, 585 (1982) (chain strung across highway was road defect); *Miles* v. *Commonwealth*, 288 Mass. 243, 243-244 (1934) (decayed tree located nine feet past highway was road defect); *Valvoline Oil Co.* v. *Winthrop*, *supra* at 520-521 (tree

limb over highway was road defect). See also *Gallant* v. *Worcester*, 383 Mass. 707, 711 (1981). We have no difficulty concluding that a sign that is obstructed by overgrowing foliage is a defective sign that falls within the Commonwealth's statutory duty to "maintain [such sign] for promoting the public safety and convenience." A sign that cannot be seen by travelers on the road is equivalent to no sign at all.

That the town also had an obligation to maintain Concord Road, including the foliage surrounding the stop sign, free of defects, see G. L. c. 84, § 15, does not negate the existence of a similar duty, with respect to the stop sign, on the part of the Commonwealth. The Commonwealth's argument to the contrary is not persuasive. Public safety can only be enhanced by the town's and the Commonwealth's dual responsibility. The Commonwealth argues that to require periodic safety inspections of all of its signs would impose an "unwieldy and an unwarranted" burden. The force of this argument is largely undercut, however, by the Legislature's express reference, in G. L. c. 85, § 2, to "the department's current manual on uniform traffic control devices" as a source of guidance for the manner in which highways are to be maintained. Section 2A-30 of that manual instructs that a suitable schedule should be established for safety inspections of signs and specifically states that "[s]pecial attention and necessary action should be taken to see that weeds, trees, shrubbery and construction materials do not obscure the face of any sign." Had the department heeded this provision, it is quite possible that this tragic incident could have been avoided.

We acknowledge the apparent contradiction presented when the duty we have just described is considered in conjunction with language of G. L. c. 87, §§ 3 and 5, providing that a town tree warden (or a deputy) has the exclusive authority to trim or remove shade trees and bushes located on town land. Section 3 ("public shade trees shall not be cut, trimmed or removed, in whole or in part, by any person other than the tree warden or his deputy") and § 5 ("[t]ree wardens and their deputies, but no other person, may, without a hearing, trim, cut down or remove trees . . . and bushes, standing in public ways"), read literally, would prohibit a department employee from cutting

down the overgrowing foliage in this case even if an inspection had revealed that the foliage impaired the sign's visibility. As this court held in *Valvoline Oil Co.* v. *Winthrop, supra*, however, that a tree warden has exclusive statutory authority to trim public trees and bushes does not relieve other town officials from their own obligatory duties to exercise due care to keep highways reasonably safe for travelers. See *id.* at 520. So it is here. Therefore, when an inspection reveals the presence of foliage needing to be trimmed, the department may inform the town that the task of trimming, or removing, the foliage needs to be carried out. See *Valvoline Oil Co.* v. *Winthrop, supra.* In the alternative, G. L. c. 87, §§ 3 and 5, notwithstanding, and in light of the fundamental legislative concern for the safety of the traveling public embodied in G. L. c. 85, § 2, we conclude that the department properly may take it on itself to trim any such foliage. The Legislature would not have authorized the Commonwealth to install and maintain signs necessary to protect the traveling public and then deny it the means to ensure that its signs remain in a functional condition. Any other resolution of the statutes' interplay would be neither practical nor sensible.[7] See *Healey* v. *Commissioner of Pub. Welfare*, 414 Mass. 18, 25-26 (1992); *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976); *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Comm'n*, 354 Mass. 408, 414 (1968).

3. We reject the Commonwealth's claim of immunity for any negligence on its part. General Laws c. 258, § 10 (*f*), grants the Commonwealth immunity from "any claim based upon the failure to inspect, or an inadequate or negligent inspection, of any property, real or personal, to determine whether the property complies with or violates any law, regulation, ordinance or code, or contains a hazard to health or safety." This language applies to situations where the Commonwealth inspects the property of third parties, as in the case of an inspection for code

---

[7]The sentence in G. L. c. 87, § 5, beginning, "Nothing contained in this chapter shall prevent the trimming, cutting or removal of any tree which endangers persons traveling on a highway," may fairly be construed as an exception permitting the Commonwealth to trim trees that endanger persons traveling on a highway. The sentence demonstrates a legislative intent to place primary importance on public safety.

compliance. See *Barnes* v. *Metropolitan Hous. Assistance Program*, 425 Mass. 79, 85 (1997) ("the Legislature, in enacting G. L. c. 258, § 10 [*f*], undertook to negate the doctrine" of *Ayala* v. *Boston Hous. Auth.*, 404 Mass. 689, 704 [1989] [holding that Massachusetts Tort Claims Act allows suit against housing authority for breach of contractual duty to inspect housing for lead-based paint hazard]). It does not preclude claims, as here, arising from the Commonwealth's negligent maintenance of its own property, even though that maintenance may include inspections. If there is any lingering doubt as to whether the Commonwealth is immune from the plaintiffs' suit, that doubt is put to rest by G. L. c. 258, § 10 (*j*) (3), which provides that the Commonwealth has no immunity from "any claim based on negligent maintenance of public property." The sign in question was designed, installed, and maintained by the Commonwealth, and even though the sign was situated on town land, there is no reason that the Commonwealth should not be liable for damage caused by any failure to maintain it in a safe condition. As acknowledged by the plaintiffs, the limit of the Commonwealth's liability in any case is not to exceed $100,000.

4. We affirm the orders denying the Commonwealth's motions for summary judgment and for reconsideration and remand the case to the Superior Court for trial.

*So ordered.*