MICHELLE FORTENBACHER, individually and as administratrix,[1]
*vs.* COMMONWEALTH.

No. 07-P-937.

·        Bristol. April 3, 2008. - June 16, 2008.

Present: TRAINOR, SMITH, & MEADE, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Negligence,* Wrong-
    ful death, Governmental immunity.

Discussion of the standard of review applicable to a denial of summary
    judgment. [85]
Discussion of the origins of the Massachusetts Torts Claims Act, G. L. c. 258,
    and the discretionary function exception to the Commonwealth's waiver of
    sovereign immunity. [85-86]
In a wrongful death action against the Commonwealth, the judge erred in fail-
    ing to undertake an analysis of the Commonwealth's claim of immunity
    from suit under the Massachusetts Torts Claims Act, G. L. c. 258, § 10,
    where neither the gravity of the harm alleged nor the substantial merit that
    might underlie a claim informed the immunity inquiry. [86-87]
In a wrongful death action against the Commonwealth as a result of a fatal
    motor vehicle accident on a bridge, the judge erred in denying the Com-
    monwealth's motion for summary judgment, where under the discretionary
    function exception of the Massachusetts Torts Claims Act, G. L. c. 258,
    § 10(*b*), the Commonwealth was immune from suit because no statute
    eliminated the Commonwealth's discretion relative to the bridge's construc-
    tion, repair, or design, and the plaintiffs failed to carry their burden of
    demonstrating, through evidence admissible at trial, a genuine issue of
    material fact as to the existence of an established agency practice relative
    to the necessity of providing bridge guardrails. [87-90]
There was no merit to the argument that the Commonwealth was liable to suit
    under the public duty rule codified in the Massachusetts Torts Claims Act,
    G. L. c. 258, § 10(*j*), where the Commonwealth was immune from suit
    under the discretionary function exception, G. L. c. 258, § 10(*b*). [90]

CIVIL ACTION commenced in the Superior Court Department on
August 27, 2002.

The case was heard by *Gary A. Nickerson*, J., on a motion for
summary judgment.

[1]Of the estate of Richard MacCord, Jr.

*Timothy R. McGuire*, Assistant Attorney General, for the Commonwealth.

*Lynn M. Whitney* for the plaintiff.

MEADE, J. The plaintiff, Michelle Fortenbacher, individually and in her capacity as the administratrix of the estate of her son, Richard MacCord, brought this wrongful death action, pursuant, in part, to the Massachusetts Tort Claims Act (Act), G. L. c. 258, against the Commonwealth as a result of a fatal motor vehicle accident on a bridge. The Commonwealth's motion for summary judgment, which claimed, among other things, that it was immune from suit pursuant to § 10(*b*) of the Act, was denied by a Superior Court judge.[2] In its as-of-right interlocutory appeal of that order, see *Brum* v. *Dartmouth*, 428 Mass. 684, 687-688 (1999), the Commonwealth claims error in the denial of its motion. We agree and reverse.

1. *Background.* a. *The accident.* In the light most favorable to Fortenbacher, the undisputed facts gleaned from the materials submitted on summary judgment reveal the following. On August 29, 1999, MacCord was a passenger in a car being driven by Melissa Hartnett. Hartnett was driving eastbound on Route 6 over the New Bedford-Fairhaven Bridge (bridge), which spans the Acushnet River, when her car collided with another vehicle on the bridge. As a result of the collision, Hartnett's car struck a bridge railing and fell into the river. Both Hartnett and MacCord drowned in the submerged vehicle.[3]

b. *Bridge construction.* At the time of the accident, the bridge was equipped with two railings on each side, but only on the westbound side did both railings extend the entire length of the bridge. The exterior railing was a pedestrian railing, which appeared to be part of the original bridge, constructed in 1901. The second, interior railing separated vehicular traffic from pedestrians on the bridge's sidewalk. The interior railing had been built

---

[2]The Commonwealth's motion for summary judgment was allowed as to Fortenbacher's claims for conscious pain and suffering and loss of consortium. No appeal has been taken from this portion of the order.

[3]Suit was also filed against the Commonwealth on behalf of Hartnett. On appeal from the denial of the Commonwealth's summary judgment motion, this court, in an unpublished memorandum and order issued pursuant to our rule 1:28, reversed the order of denial and ordered that judgment enter in favor of the Commonwealth. See *Harnett* v. *Commonwealth*, 65 Mass. App. Ct. 1125 (2006).

in two sections, each at different times, one on top of the other. The bottom section was a concrete parapet curb and the top section was made of aluminum. Beginning in 1972 and ending in 1973, the Massachusetts Highway Department (MHD) installed the aluminum railing, which increased the height of the original interior railing. The plans for this 1972 installation project show the parapet curb as an existing structure on the bridge.

On the day of the accident, Hartnett's car, traveling east, struck the exterior pedestrian railing, which was the only railing that extended the length of eastbound side of the bridge. The interior railing and parapet curb did not extend far enough on the eastbound side of the bridge to offer a barrier to prevent Hartnett's car from plunging into the river.

c. *The complaint and summary judgment.* Pursuant to the Act and G. L. c. 229, § 2,[4] Fortenbacher claimed that the MHD breached its duty to properly maintain, repair, and keep safe the bridge, and that those failures caused MacCord's wrongful death.[5] Specifically, she claimed that the MHD failed to follow its own policies when it neglected to install, during the 1972 installation project, a proper guardrail or interior railing that followed the entire eastbound side of the bridge.

Maintaining that the decision whether and how to erect guardrails constituted a discretionary function under § 10(*b*) of the Act, which exempts it from suit, the Commonwealth moved for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). The judge found no need to resolve this issue because even if § 10(*b*) applied to the 1972 installation project, the Commonwealth might nonetheless be liable for negligence in light of events that occurred after 1972. Specifically, the judge noted that the record revealed that bridge inspection reports

---

[4]Section 2 of G. L. c. 229 creates a cause of action for wrongful death. It states, in relevant part: "A person who . . . by his negligence causes the death of a person . . . shall be liable in damages . . . ." G. L. c. 229, § 2, inserted by St. 1973, c. 699, § 1.

[5]Fortenbacher's claims as to conscious pain and suffering and loss of consortium were governed by G. L. c. 81, § 18, which attaches liability to the Commonwealth for injuries sustained on defective State highways. Although not before us on appeal, see note 2, *supra*, these claims were properly dismissed because § 18 expressly exempts the Commonwealth from liability for want of a railing on any State highway. See *Karlin* v. *Massachusetts Turnpike Authy.*, 399 Mass. 765, 767-768 (1987).

from 1993, 1997, and 1999 stated that the bridge was potentially unsafe to the traveling public due to the nature of the eastbound railing, and the chain link fence that was present could not safely redirect an impacting vehicle. There was also an assertion by Fortenbacher that at least four prior accidents occurred on the bridge, some of which were fatal. Given this, the judge found that genuine issues of material fact existed whether the Commonwealth was on notice that the bridge was dangerous, and whether it had committed a breach of its duty to remedy that danger. Summary judgment was denied.

2. *Discussion.* a. *Standard of review.* We review a denial of summary judgment to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Miller* v. *Mooney*, 431 Mass. 57, 60 (2000), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). "The moving party has the burden of demonstrating affirmatively the absence of a genuine issue of material fact on every relevant issue, regardless of who would have the burden on that issue at trial." *DiPietro* v. *Sipex Corp.*, 69 Mass. App. Ct. 29, 30 (2007), quoting from *Arcidi* v. *National Assn. of Govt. Employees, Inc.*, 447 Mass. 616, 619 (2006). Once that burden is met, the nonmoving party is to show, with admissible evidence, a dispute as to a material fact. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991). The nonmoving party's failure to prove an essential element of its case "renders all other facts immaterial" and mandates summary judgment in favor of the moving party. *Ibid.* Our review of the denial of the motion for summary judgment is de novo. See *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007).

b. *The Massachusetts Tort Claims Act.* The Act was enacted in response to the Supreme Judicial Court's decision in *Whitney* v. *Worcester*, 373 Mass. 208 (1977), where the court stated its intention to abrogate the doctrine of governmental immunity unless the Legislature took action as to the doctrine. *Id.* at 210. The next year, the Legislature passed the Act, which provides that public employers, including the Commonwealth, are liable "for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public

employee while acting within the scope of his office or employment." G. L. c. 258, § 2, inserted by St. 1978, c. 512, § 15.

By design, the Act abrogated some of the traditional notions of sovereign immunity and provided consent to suit, but it also retained specified areas where the Commonwealth would remain unamenable to suit. See G. L. c. 258, § 10. One such area, where the Legislature chose not to waive the Commonwealth's immunity from suit, was for acts or omissions that have a specified discretionary quality. This exemption from the waiver of immunity was codified in § 10(*b*) of the Act. Section 10(*b*) renders the Commonwealth immune from suit for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10(*b*), inserted by St. 1978, c. 512, § 15.

In this case, the judge did not undertake an analysis of the Commonwealth's claim of immunity from suit. Instead, the judge determined that he did not need to resolve the issue because even if the discretionary function applied to the work done on the bridge in 1972 and 1973, the bridge inspection reports from 1993, 1997, and 1999 put the Commonwealth on notice that the bridge was dangerous. Such an approach, however, improperly conflates the questions of the existence of negligence and the availability of immunity. Neither the gravity of the harm alleged nor the substantial merit that may underlie a claim inform the immunity inquiry. See *Smith* v. *Registrar of Motor Vehicles*, 66 Mass. App. Ct. 31, 32 (2006). See also *Barnett* v. *Lynn*, 433 Mass. 662, 665-666 (2001) (that the city had prior notice of a danger is irrelevant to the discretionary function inquiry of § 10(*b*) because the exemption extends even to circumstances where the public employer "abused" its discretion). Rather, § 10(*b*) immunity is grounded in the public policy notions that certain governmental activities should not be challenged by suit, and that courts are not positioned to officiate policy disputes related to politics and the allocation of public resources. For these reasons, and because § 10 of the Act provides public employers with

immunity from suit in specified areas, "a right that is 'lost as litigation proceeds past motion practice,' " *Brum* v. *Dartmouth*, 428 Mass. at 688, quoting from *Puerto Rico Aqueduct & Sewer Authy.* v. *Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993), it was error for the judge to pass on the question.

c. *The discretionary function exception.* To determine whether the discretionary function exception of § 10(*b*) of the Act applies to injury-causing conduct requires a two-step analysis. *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992). The first step is to determine whether the Commonwealth had any discretion at all as to what course of conduct to follow. *Ibid.* If the Commonwealth had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, then the discretionary function exception does not apply. *Ibid.* The second step is to determine whether the discretion that the Commonwealth had is the type of discretion for which § 10(*b*) provides immunity from suit. *Ibid.* That is, § 10(*b*) provides "immunity only for discretionary conduct that involves policy making or planning." *Ibid.* In other words, we must determine whether the conduct that caused the injury has a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning," as opposed to conduct that consists of "the carrying out of previously established policies or plans." *Id.* at 142, quoting from *Whitney* v. *Worcester*, 373 Mass. at 218.

Fortenbacher claims that two statutes, G. L. c. 85, §§ 2 and 35, prescribed a course of conduct which eliminated the MHD's discretion relative to bridge construction, repair, and design. However, neither of these statutes does anything of the kind. The first, G. L. c. 85, § 2, authorizes the MHD to install warning signs and traffic signals on State highways when it deems them necessary, and the second, G. L. c. 85, § 35, regulates weight limits on certain types of bridges. Neither statute purports to limit, in any manner, the MHD's discretion regarding bridge construction, repair and design.[6]

Fortenbacher next asserts that the 1966 MHD safety standards

---

[6]Fortenbacher also relies on a 1994 MHD "Engineering Directive," which requires that all areas under MHD jurisdiction "judged dangerous for either pedestrian or vehicular traffic . . . be barricaded with 'Jersey Barriers[,'] be

established an agency practice relative to the necessity of bridge guardrails. This allegation is supported by an affidavit from Gilbert M. Nelson, a registered professional civil engineer. Nowhere did Nelson document, assert, or offer any basis from which a reasonable fact finder could conclude that applicable MHD standards existed in 1972, or earlier, or that it was established agency practice to conform to such standards. See *Harry Stoller & Co.* v. *Lowell, supra* at 141. Instead, what Nelson offered was his opinion that the 1972 reconstruction work on the bridge violated the MHD's construction standards. Nelson neither cited nor appended any actual standards, but rather based his opinion on his claim that he had read the third printing of the "1966 Standards" and "believe[d]" those standards were in place in 1972. Such testimony would not be admissible at trial and, thus, fails to satisfy Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), requiring that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and . . . [s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."[7] See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985) (affidavits require admissible evidence to ensure "trial would [not be] futile on account of lack of competent evidence" [citation omitted]). Nelson's unsupported and vague opinion does not create a genuine issue of material fact as to the existence of standards in 1972 sufficient to defeat the Act's discretionary function exception. See *LaLonde* v. *Eissner*, 405 Mass. 207, 209-210 (1989) (in order to defeat summary judgment, the nonmoving party must allege specific facts establishing a genuine, triable issue).

---

protected by chain link fencing, or other means that fully restrict access to such areas." Putting aside any challenge to the authenticity of this document, this directive provides the MHD with discretion to determine which areas were dangerous and required barriers. Even if we were to equate the statement in the bridge inspection reports that the bridge was "potentially unsafe," due to the nature of the eastbound interior railing, with a determination that the bridge was "dangerous," then this would only suggest that the MHD "abused" its discretion, which is not enough to defeat § 10(*b*) immunity. See *Barnett* v. *Lynn*, 433 Mass. at 665-666. In any event, there is nothing in the record that demonstrates that this directive applied to this bridge or that it constituted an established agency practice.

[7]The Commonwealth's motion to strike Nelson's affidavit was not acted upon by the judge.

In contrast, and in support of its summary judgment motion, the Commonwealth provided an affidavit from Alton Ellis, a structures maintenance engineer for MHD. Ellis categorically denied that there were any requirements or standards in existence that required the bridge's railings to have a certain level of crash resistance or required the MHD to rebuild or redesign the bridge's railings. See *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 612 (1996) (where the plaintiff was unable to show that a city had a prescribed policy or regulation, the discretionary function exception applied).

Even if we were to assume that the standards Nelson claimed to be familiar with applied to the 1972-1973 work done on the bridge, both Nelson and Ellis agreed that extending the eastbound interior railing on the bridge to protect the area of the accident would affect access to a privately owned driveway. Nelson also stated that all "standards" must be "adapted" to the existing area of the driveway so as to provide traffic safety, and that such "design and construction" measures were "feasible and economical." As Ellis described it, "there was no off-the-shelf solution" to the problem posed by the private driveway, which was unique to any State-owned bridge. According to Ellis, a solution would require "consideration of different alternatives, each of which ha[d] its own strengths and weaknesses."

As described by these expert witnesses, what we are left with is the quintessential type of discretion for which § 10(*b*) of the Act provides immunity. That is, "when the conduct that caused the injury has a 'high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability.' " *Harry Stoller & Co.* v. *Lowell*, 412 Mass. at 142, quoting from *Whitney* v. *Worcester*, 373 Mass. at 218. Fortenbacher's contrary claim invites the judicial "second-guessing" of administrative decisions grounded in social, economic, and political policy that the discretionary function exception was designed to prevent. See *United States* v. *Gaubert*, 499 U.S. 315, 323 (1991). See also *Patrazza* v. *Commonwealth*, 398 Mass. 464, 466 (1986) ("it is clear that the design of the guardrail and the policy implementing its use, the bases of the action for wrongful death, are encompassed within the discretion-

ary acts exception of G. L. c. 258, § 10[*b*]''); *Barnett* v. *Lynn*, 433 Mass. at 664 (''The city has discretion in deciding how best to expend its resources in order to provide safe and secure conditions'').

d. *Exceptions to immunity under the public duty rule.* Finally, Fortenbacher's argument that § 10(*j*)(3) of the Act precludes the Commonwealth's claim to immunity is based on a misunderstanding of the purpose of that subsection and the operation of immunity under § 10. Section 10(*j*) is the Legislature's codification of the common-law public duty rule.[8] See *Kent* v. *Commonwealth*, 437 Mass. 312, 317-318 (2002). Pursuant to § 10(*j*), the Commonwealth is immune from suit for ''any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.'' G. L. c. 258, § 10(*j*), inserted by St. 1993, c. 495, § 57. But immunity under § 10(*j*) is not limitless, and does not apply to ''any claim based on negligent maintenance of public property.'' G. L. c. 258, § 10(*j*)(3). See *Twomey* v. *Commonwealth*, 444 Mass. 58, 64 (2005).

Here, because we have determined that the Commonwealth is immune from suit pursuant to § 10(*b*) of the Act, any exception to immunity based on the public duty rule pursuant to § 10(*j*) is therefore inapplicable in this case. See *Ariel* v. *Kingston*, 69 Mass. App. Ct. 290, 294 (2007). Contrast *Greenwood* v. *Easton*, 444 Mass. 467, 473-475 (2005). ''The immunities provided by § 10 operate in the alternative; even if one immunity contains an exception that would permit a claim to be brought, that claim is barred if any of the other immunities apply.'' *Brum* v. *Dartmouth*, 428 Mass. at 697. In this case, § 10(*b*) provides the Commonwealth with an independent basis for immunity from suit.

3. *Conclusion.* The order dated February 12, 2007, is reversed

---

[8]Section 10(*j*) was enacted in 1993 at the Supreme Judicial Court's invitation shortly after it announced its intention in *Jean W.* v. *Commonwealth*, 414 Mass. 496, 499 (1993), to abolish the common-law public duty rule at the first available opportunity after the close of the 1993 legislative session. See *Lawrence* v. *Cambridge*, 422 Mass. 406, 408-409 (1996).

insofar as it denied the motion for summary judgment. Judgment shall enter in favor of the Commonwealth.[9]

*So ordered.*

---

[9] Our resolution of the appeal obviates the need to address the Commonwealth's argument concerning the application of the statute of repose pursuant to G. L. c. 260, § 2B.