NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13470

JANE DOE[1]  vs.  MASSACHUSETTS TRIAL COURT.


Essex.     January 5, 2024. - July 29, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.


Trial Court, Court officers.  Negligence, Jailor.  Massachusetts
    Tort Claims Act.  Immunity from Suit.  Imprisonment.
    Practice, Civil, Summary judgment.



     Civil action commenced in the Superior Court Department on November 3, 2017.

     The case was heard by John T. Lu, J., on a motion for summary judgment.

     The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


     Thomas J. Gleason for the plaintiff.
     Benjamin N. Ernst, Assistant Attorney General (Daniel G. Cromack, Assistant Attorney General, also present) for the defendant.

_____

     [1] A pseudonym.

GEORGES, J.  The plaintiff, Jane Doe, alleges that on multiple occasions in 2009 and 2014 she was sexually assaulted by then court officer Jose Martinez while in custody at the Lawrence Division of the District Court Department (Lawrence District Court) in connection with pending criminal charges in that court.[2]  Doe brought suit in the Superior Court, alleging the Massachusetts Trial Court (Trial Court) negligently failed to prevent the sexual assaults.

The Trial Court moved for summary judgment, arguing the Massachusetts Tort Claims Act (MTCA), G. L. c. 258, immunized it from suit.  A Superior Court judge agreed and granted the Trial Court's motion, concluding that the MTCA's discretionary function exception, G. L. c. 258, § 10 (b), barred Doe's negligence claim.[3,4]  We affirm.

---

[2] We refer to the Massachusetts Trial Court as the "Trial Court," and the Lawrence Division of the District Court Department as the "Lawrence District Court" for purposes of consistency and clarity.

[3] The Trial Court is exempt from liability for intentional torts of its employees.  See G. L. c. 258, § 10 (c).  See also FBT Everett Realty, LLC v. Massachusetts Gaming Comm'n, 489 Mass. 702, 718 (2022) (§ 10 [c] bars claims against public employers for intentional torts of their employees).

[4] The motion judge also concluded the MTCA's statutory public duty rule, G. L. c. 258, § 10 (j), was an "alternative avenue" by which summary judgment was appropriate.  Because we conclude G. L. c. 258, § 10 (b), completely bars Doe's negligence claim, we need not address this "alternative avenue." See Brum v. Dartmouth, 428 Mass. 684, 697 (1999) ("The

Background.  1.  Facts.  We recite the material, undisputed facts from the summary judgment record in the light most favorable to the nonmoving party -- in this case, Doe -- reserving some facts for later discussion.  See Hill-Junious v. UTP Realty, LLC, 492 Mass. 667, 668 (2023).

a.  2009 and 2014 assaults.  Martinez first sexually assaulted Doe in or around July 2009, when he groped Doe during an elevator ride and then raped her in a holding cell.  No one else was present during the assaults, and Doe did not notify anyone at the Lawrence District Court on the day they occurred. Later that day, Doe was transported to a New Hampshire jail where she was held on other, unrelated criminal charges.  In November 2009, while still held on the New Hampshire charges, Doe reported Martinez's July 2009 sexual assaults to representatives of the New Hampshire Department of Corrections (NHDOC); however, the NHDOC never notified the Trial Court of the July 2009 sexual assaults.

Approximately five years later, in September and October 2014, Martinez again sexually assaulted Doe when she was in custody at the Lawrence District Court.  In September 2014, Martinez slipped his hands through a slot in a metal trapdoor

---

immunities provided by § 10 operate in the alternative; even if one immunity contains an exception that would permit a claim to be brought, that claim is barred if any of the other immunities apply").

and groped Doe through her clothing.  No other court employees were present for this assault.  Later that same day, while the two were in an elevator alone, Martinez stopped the elevator with a key, groped and attempted to rape Doe, took photographs of her vagina, and exposed his penis.  The following month, in October 2014, Martinez removed Doe from her cell, brought her beneath a stairway in an employee-only area, and once more raped her.  Doe never notified any Trial Court or Lawrence District Court representatives about the September and October 2014 sexual assaults.

In December 2014, after Doe was transferred to the custody of New Hampshire authorities, she reported the September and October 2014 sexual assaults to representatives of the NHDOC.  Like her 2009 report, there is no record evidence the NHDOC communicated these reports to the Trial Court.  Instead, in December 2014, the NHDOC notified the Massachusetts State police of Doe's 2014 allegations, together with her 2009 allegations.  The State police arrested Martinez in March 2015.

b.  2013 incident.  In July 2013, another adult female detainee claimed Martinez had groped her at the Lawrence District Court.  The detainee alleged the sexual assault occurred in the holding area at the court, near an elevator, as Martinez pat frisked her.  The Lawrence police department investigated this allegation.  As part of the investigation, an

officer spoke with employees of the court, including Martinez, about the alleged incident and about the policies and procedures implemented at the court to ensure the safety of detainees. The Lawrence police department also notified the Trial Court of the detainee's allegations. In a report summarizing the investigation, the Lawrence police concluded that it was "highly unlikely" the assault could have happened as alleged by the detainee.

Michael McPherson, a regional director of security for the Trial Court, conducted his own investigation of the detainee's allegation. His investigation consisted of a review of security camera footage from the day the alleged assault took place. There was no security camera footage of the holding area where the assault was alleged to have taken place; McPherson was limited to reviewing footage of the elevator Martinez used to bring the detainee to the holding area. McPherson similarly could not substantiate the detainee's allegations.

2. Procedural background. In November 2017, Doe commenced this action, alleging the Trial Court was negligent for failing to prevent Martinez's sexual assaults of her. Specifically, Doe alleged the Trial Court had failed to conform its lockup and detainee transportation policies and procedures to the standards promulgated by the Federal government under the Prison Rape

Elimination Act (PREA), 34 U.S.C. §§ 30301 et seq.[5]
Additionally, Doe alleged the Trial Court had failed to
investigate and discipline Martinez.

The Trial Court filed a motion for summary judgment,
claiming it was immune from suit under the MTCA.  Concluding
that Doe's negligence claim was barred by G. L. c. 258,
§ 10 (b), a Superior Court judge granted the Trial Court's
motion.  Doe appealed.  While Doe's appeal was pending in the
Appeals Court, we transferred the case to this court on our own
motion.

Discussion.  1.  Standard of review.  Our review of a
summary judgment decision is de novo.  See Metcalf v. BSC Group,
Inc., 492 Mass. 676, 680 (2023).  "Summary judgment is
appropriate where there is no material issue of fact in dispute
and the moving party is entitled to judgment as a matter of law"
(citation omitted).  Adams v. Schneider Elec. USA, 492 Mass.
271, 280 (2023).  To succeed on a motion for summary judgment, a
moving party "may satisfy [its] burden of demonstrating the
absence of a triable issue either by submitting evidence that
negates an essential element of the opposing party's case or by
demonstrating that the opposing party has no reasonable

---

[5] PREA was originally codified as 42 U.S.C. §§ 15601 et seq.
It was transferred to 34 U.S.C. §§ 30301 et seq. in 2017.

expectation of proving an essential element of [her] case at trial" (citation omitted).  Hill-Junious, 492 Mass. at 672.

2.  The MTCA and its discretionary function exception.  The MTCA, G. L. c. 258, allows limited tort liability for the Commonwealth and its political subdivisions.  See Cormier v. Lynn, 479 Mass. 35, 38-39 (2018).  Section 2 of the MTCA abrogated common-law governmental immunity, making public employers potentially liable for the negligent or wrongful conduct of their employees acting within the scope of their employment.  See G. L. c. 258, § 2.  See also FBT Everett Realty, LLC v. Massachusetts Gaming Comm'n, 489 Mass. 702, 718 (2022).  The MTCA, however, "is not a blanket waiver of protection."  Shapiro v. Worcester, 464 Mass. 261, 270 (2013).  Section 10 of the MTCA creates several exceptions to the general waiver of sovereign immunity.  See G. L. c. 258, § 10 (a)-(j).

Among those exceptions is the MTCA's discretionary function exception, which exempts public employers from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer . . . acting within the scope of his office or employment, whether or not the discretion involved is abused."  G. L. c. 258, § 10 (b).  Section 10 (b) "distinguishes between 'discretionary' acts, defined as 'conduct that involves policy making or planning,' and 'functionary' acts, that is,

those actions that simply implement established policy."
Magliacane v. Gardner, 483 Mass. 842, 859 (2020), quoting Harry
Stoller & Co. v. Lowell, 412 Mass. 139, 141-142 (1992).

To assess whether a governmental actor's conduct falls
within the discretionary function exception, we developed a two-
step analysis. See Magliacane, 483 Mass. at 860. At step one,
we examine "whether the governmental actor had any discretion at
all as to what course of conduct to follow" (citation omitted).
Id. "If the actor's conduct is prescribed by statute,
regulation, or other readily ascertainable standard, the
government has no discretion, and the exception does not apply."
Id. In such instances, the government may be subject to
liability for the negligent or wrongful conduct of its
employees. See id.

In cases where the governmental actor had discretion as
contemplated at step one, we must then determine at step two
whether the choices made by the governmental actor "involve[]
policy making or planning," thereby warranting immunity
(citation omitted). Magliacane, 483 Mass. at 860. See Harry
Stoller & Co., 412 Mass. at 141. "When the particular conduct
which caused the injury is one characterized by the high degree
of discretion and judgment involved in weighing alternatives and
making choices with respect to public policy and planning," as
opposed to conduct that consists of "the carrying out of

previously established policies," governmental entities should remain immune from liability. Whitney v. Worcester, 373 Mass. 208, 218 (1977).[6]

"Deciding whether particular discretionary acts involve policy making or planning depends on the specific facts of each case." Greenwood v. Easton, 444 Mass. 467, 470 (2005). The following considerations are relevant: (1) whether the injury-producing conduct was an integral part of government policy making or planning; (2) whether the imposition of tort liability would jeopardize the efficacy and quality of the governmental process; (3) whether a judge or jury could review the conduct in question without usurping the power and responsibility of the executive and legislative branches; and (4) whether there is an alternate remedy available to the injured individual other than an action for damages. See Whitney, 373 Mass. at 219.

---

[6] Compare Barnett v. Lynn, 433 Mass. 662, 665 (2001) (city's decision not to remove snow from parcel of public property because cost outweighed need was protected by discretionary function exception), and Patrazza v. Commonwealth, 398 Mass. 464, 469-470 (1986) (Commonwealth's alleged negligence in adopting policy of using unburied guardrail ends on unlimited access highways involved judgment or policy choice for which Commonwealth was exempt from liability under MTCA), with Irwin v. Ware, 392 Mass. 745, 753 (1984) (police officer is not making policy or planning judgment when deciding whether to remove motorist, known to be intoxicated, from roadways), and Dudley v. Massachusetts State Police, 91 Mass. App. Ct. 616, 620 (2017) (trooper's release of police dog to apprehend criminal suspect did not involve use of planning or policy-making discretion).

3.  <u>Application</u>.  Doe contends the discretionary function exception does not bar her negligence claim because the Trial Court's security policies were not compliant with Federal regulations promulgated under PREA.[7]  See 28 C.F.R. §§ 115.111-115.193.  Its failure to comply with PREA, Doe maintains, subjects the Trial Court to liability under the MTCA.  We disagree.

The Trial Court was not required to comply fully with PREA's regulations during the time of Martinez's assaults, and additionally, PREA was not in effect for a portion of that time.  Accordingly, the Trial Court had discretion in deciding which detainee safety policies and procedures to implement from 2009 (i.e., the year of the first assaults) through 2014 (i.e., the time of the last assaults).[8]

---

[7] PREA is a Federal law that incentivizes States to implement national standards designed to prevent rape in prison. See <u>Watts</u> v. <u>Commonwealth</u>, 468 Mass. 49, 62 (2014).  To this end, PREA tasked the United States Attorney General with promulgating regulations to establish "national standards for the detection, prevention, reduction, and punishment of prison rape."  34 U.S.C. § 30307(a)(1).  States that do not comply with these national standards face a five percent reduction in the amount of Federal funds provided for State prisons and jails each fiscal year.  See 34 U.S.C. § 30307(e)(2)(A).

[8] Even if the Trial Court was required to comply with PREA, courts have recognized PREA allows for a substantial degree of discretion in determining the best measures to combat sexual abuse in a prison setting.  See Tilga <u>vs</u>. United States, U.S. Dist. Ct., Civ. No. 14-256, slip op. at 26-27 (D.N.M. Dec. 5, 2014).  Accordingly, under PREA, individual agencies and

With respect to the 2009 assaults, PREA is inapplicable because PREA's national standards were not promulgated until 2012, three years after the 2009 assaults occurred.  See National Standards to Prevent, Detect, and Respond to Prison Rape, 77 Fed. Reg. 37,106 (2012).  As for the 2014 assaults, it is undisputed that, in order to maintain Federal funding, PREA required the Trial Court to create rules, policies, and procedures regarding the treatment of detainees in the lockup facility at the Lawrence District Court as of 2012.  See 28 C.F.R. § 115.5 (clarifying that PREA's national standards apply to local, State, and Federal lockup facilities).  PREA, however, did not require immediate compliance with its standards when first enacted.  A State receiving Federal funds could, in lieu of achieving full compliance, submit an assurance to the Federal government explaining the State's plan to use funds to achieve full compliance "in future years."  34 U.S.C. § 30307(e)(2)(A)-(D). Massachusetts did just that in 2014.[9]

---

facilities enjoy significant discretion when making decisions with respect to such concerns as staffing and video monitoring. See Doe vs. United States, U.S. Dist. Ct., Civ. No. 08-00517, slip op. at 17-18 (D. Haw. Apr. 29, 2011).

[9] Specifically, Massachusetts certified to the United States Department of Justice that no less than five percent of certain grant funds would be used for the purpose of enabling the State to achieve and certify full compliance with PREA's national standards in future years.  See United States Department of Justice, Bureau of Justice Assistance, States' and Territories'

Consequently, even if the Trial Court deviated from PREA's national standards in its policies and procedures concerning employee supervision, employee training, detainee monitoring, detainee transportation, detainee safety, or other relevant standards, the Trial Court retained some discretion to maintain such policies between the time that PREA's national standards were initially promulgated in 2012 and the time of the latest sexual assaults in 2014. Thus, the Trial Court has met its burden at the first step of the analysis.[10]

As for the second step, the Trial Court's security decisions are an integral part of the Trial Court's policy-making and planning process. See Patrazza v. Commonwealth, 398 Mass. 464, 469-470 (1986). The Trial Court "is faced with a wide range of alternative[s]" it could take to transport, monitor, and ensure the safety and security of detainees. Wheeler v. Boston Hous. Auth., 34 Mass. App. Ct. 36, 42 (1993). The Lawrence District Court in particular is a high-volume court house, where court officers perform various other duties in

---

Responses to the May 15, 2014 Prison Rape Elimination Act Deadline (2014), https://bja.ojp.gov/sites/g/files/xyckuh186/files/media/document/fy14-prea-certification-assurance-submissions.pdf [https://perma.cc/R46C-L9FT].

[10] We note Doe does not identify the particular PREA national standards the Trial Court is alleged to have violated, but instead points to the standards generally. Beyond PREA, Doe does not point to any other applicable statute, regulation, or other readily ascertainable standard.

addition to protecting detainees under their care.  For example, McPherson, the regional director of security, testified that court officers may be required to "accept prisoners, take out prisoners, and get prisoners ready to go up to the court rooms." Thus, considering the varying duties of court officers, continuous monitoring of the lockup area is not always possible. Further, because the Trial Court operates under budgetary constraints, it is not always possible for a female officer or more than one officer to escort a female detainee.

As a result, the Trial Court's security decisions involve weighing alternatives in allocating its limited resources to protect the security of the detainees, the public, and its employees.  See, e.g., Barnett v. Lynn, 433 Mass. 662, 664-665 (2001) (where city was financially incapable of conducting snow removal, determination whether to incur cost of constructing barrier at top or bottom of stairs was integral part of governmental policy making).  Accordingly, subjecting the Trial Court to tort liability based on its discretionary determination of how to allocate its limited resources would directly interfere with its policy-making decisions.  Doing so would essentially dictate, for example, the way the Trial Court's financial resources should be distributed across different court houses, the way detainees should be monitored and transported, and the number of court officers present in each location along

with their specific duties.  See Whitney, 373 Mass. at 224

("adoption of a plan to integrate handicapped pupils fully into

the public schools" involved complex considerations such as

weighing their special needs against allocation of school

resources).  In the absence of an applicable statute or standard

restricting the Trial Court's discretion, judges and juries are

not more competent to decide, after the fact, what the "right"

policy is than the Trial Court, the very entity charged with the

responsibility to do so.  See id.

Thus, to the extent Doe's negligence claim is predicated on

the Trial Court's implementation of policies on detainee

monitoring, transportation, and safety -- which required the

Trial Court to decide among various alternatives how to allocate

its limited financial and personnel resources -- the Trial Court

is immune under the discretionary function exception.[11]

---

[11] To the extent Doe instead predicates her negligence claim
on the Trial Court's alleged failure to supervise Martinez, her
claim would fail on its merits.  In negligent supervision cases,
an employer must have known, or at least should have known, that
the employee might harm someone in the same general way the
employee is alleged to have harmed the plaintiff.  See Foley v.
Boston Hous. Auth., 407 Mass. 640, 644-645 (1990) (plaintiffs
were required to prove employee's assault was foreseeable to
employer).

Given the record before us, no reasonable jury could
conclude Martinez's assaults on Doe were foreseeable.  There is
no record evidence the Trial Court was made aware of Martinez's
assaults on Doe during the relevant period -- that is, at the
latest, before the last assault in 2014.  See Kourouvacilis v.

Accordingly, we affirm the motion judge's decision on the Trial Court's motion for summary judgment.

Judgment affirmed.

---

General Motors Corp., 410 Mass. 706, 711 (1991) ("The burden on the moving party [at summary judgment] may be discharged by showing that there is an absence of evidence to support the non-moving party's case").  With respect to the other female detainee, while there is evidence the Trial Court knew about the 2013 incident, the subsequent investigation did not substantiate the allegations.  See Doe v. Vigo County, Ind., 905 F.3d 1038, 1047 (7th Cir. 2018) (harm to volunteer was not reasonably foreseeable to employer where prior misconduct from employee was unsubstantiated).